JAMES M. TURNER v. FREDERICK H. STEPHENSON.

*Adverse possession—Occupancy of portion of premises claimed.*

1. Adverse possession, for the statutory period, of 40 acres of land, under a recorded deed covering the entire 160 acres, will not, of *itself*, give the occupant title to the land not so *actually* occupied.

2. In *Murray v. Hudson*, 65 Mich. 670, it was held that evidence of the adverse use, for the statutory period, of a parcel of land as a wood lot appurtenant to a farm, in the usual and ordinary way pertaining to the ownership of farm lands, was a good defense as against one claiming under the original title.

Error to Grand Traverse. (Ramsdell, J.) Argued May 9 and 10, 1888. Decided November 28, 1888.

Ejectment. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Frank E. Robson,* for appellant.
*Pratt, Hatch & Davis,* for defendant.

[The points of counsel and authorities cited are stated in the opinion.—REPORTER.]

MORSE, J. Action of ejectment.

The land in controversy, the S. ½ of the N. E. fractional ¼ of section No. 4, township 25 N., of range 11 W., and being 80 acres, belongs to the lands granted to the State under the swamp-land act of 1850. It was patented to the State in that year. In 1872 the State issued a patent under which, by mesne conveyances, the plaintiff claims title. The defendant, under the homestead law, located 160 acres, described in his patent as the N. E. ¼ of section No. 4, same town and range as the State patent to Turner. It will be seen that the 160 acres located by defendant as a homestead included the 80 acres claimed by Turner, and conveyed to his grantors by the State.

It was conceded that Turner had the better title of record, and must recover unless the defendant could avoid the same by showing adverse possession. Defendant actually entered into possession of his homestead in October, 1863, which possession has been continuous and uninterrupted since that time. But he lived and made his improvements almost entirely upon the north-west 40 acres. There was evidence tending to show that he made some clearing or chopping quite early upon some small portion of the south-west 40, which Turner claims, and he testified that in the last three years he has chopped about 10 acres upon it, and cleared 6 of the 10; also, that he paid taxes upon the whole 160, nearly, if not all

of, the years since it became taxable, and has used the south-west 40 as a wood lot, and pastured his cattle thereon.

The circuit judge, and we think erroneously, instructed the jury that—

"The occupancy of the N. W. ¼ of the premises under a patent claiming the whole, and registered, was possession of the entire 160 acres. Therefore, if you find from the evidence that the defendant in this case has occupied that portion of the premises for the whole period, consecutively, of 20 years, adversely, openly, notoriously, and in defiance of the rights of the plaintiff, or the rights of any other parties, then he is entitled, under the law, to the premises, and your verdict will be for the defendant."

The question as to the payment of taxes, or the use or improvement of the land claimed by Turner, or any portion of the same, was by this direction eliminated from the case, and it is therefore unnecessary to determine what bearing such facts, if established, might have upon the question of title to the same in the defendant by adverse possession. The jury were clearly informed that, if the defendant had occupied the north-west 40 alone, for the requisite number of years, adversely to all the world, and under a recorded deed to the whole 160 acres, it was not necessary that anything should have been done upon the 80 acres claimed by plaintiff, or towards it, in order to hold it by adverse possession.

We cannot see how a man, by simply occupying his own land, the title to which is not disputed, can acquire title to another's land, simply because the deed to the land he occupies covers adjoining land, which he neither owns nor occupies. If so, then the mere recording of a deed would amount constructively to actual possession. The plaintiff in this case, or any other person, is not bound to suppose that a man occupying adjoining land

to his own is thereby claiming title to or possession of his premises.

The cases cited by the counsel for defendant are hardly applicable to the case at bar. They are cases, as far as cited from this State, where there had been acts of user going further than the mere record of title. The 80 acres claimed by plaintiff, and the 80 acres upon the west 40 of which the defendant made his occupation, are distinct tracts of land, and so regarded by the general government, the source of the original title. These authorities might have some application to the proofs as made by the defendant on the trial, but they do not support the charge of the court, upon which, it must be presumed, the jury acted. *Murray v. Hudson,* 65 Mich. 670 (32 N. W. Rep. 889); *Youngs v. Cunningham,* 57 Id. 153 (23 N. W. Rep. 626); *Hardy v. Powell,* 40 Id. 415; *Campau v. Campau,* 44 Id. 33 (5 N. W. Rep. 1062). The same may be said of most of the other authorities cited. See *Fletcher v. Fuller,* 7 Sup. Ct. Rep. 677; *Public Schools v. Risley's Heirs,* 40 Mo. 370; *Davis v. Easley,* 13 Ill. 201; *Whitford v. Drexel,* 118 Id. 600 (9 N. E. Rep. 268); *Fussel v. Hughes,* 8 Fed. Rep. 396; *Murphy v. Doyle,* 37 Minn. 113 (33 N. W. Rep. 220).

In *Murray v. Hudson,* 65 Mich. 670, the parcel of land in issue had been used by Bryce, and those claiming under him, as a wood lot appurtenant to a farm, in the usual and ordinary way pertaining to ownership of farm lands; and this possession, being adverse for a sufficient length of time, was held a good defense to the original title. The other cases cited in this State are not analogous in their facts to the case under consideration.

In the case of *Murphy v. Doyle, supra,* the defendant acquired a tax deed to an 80-acre tract of land. The land was vacant and unimproved, and was all heavy tim-

ber, except about eight acres of marsh.     Claiming title
to the whole tract under his tax title, Doyle entered upon
the premises, and cleared and fenced a few acres the first
year, and planted it with a crop.     Each year thereafter
he made additional clearing, until at the time of the suit
he had in all some 30 or 40 acres inclosed and under
cultivation.     He also cut hay every year upon the marsh
land, which he had drained but not fenced.     Every spring
he made sugar upon the uninclosed land.     He paid taxes
each year on the whole 80 acres.     It was held that these
facts constituted adverse possession of the whole tract.
Doyle did not reside on any of the land.

It is stated in the opinion that where the occupant of
land enters under color of title through a deed, he is
presumed to have intended his entry to be co-extensive
with the description contained in his deed, although the
actual improvements are on only a portion of the land;
and when there has been a continued occupation of
some part of the land included in such conveyance he
will be deemed to have been in the adverse possession of
the whole of such premises, if not in the adverse posses-
sion of some one else.     It is, however, stated, further,
that this proposition is subject to the proviso that the
premises described in the conveyance consist of a single
tract of a proper size to be managed and used in one
body, according to the usual manner of business of the
country.     But the holding was based upon the facts as
before stated; it being considered that the 80 acres were
within the ordinary size of a single farm, and that Doyle,
except making his residence upon the land, had done all
in the way of occupying the whole tract that the nature
and condition of the property reasonably admitted of.

Under the direction of the circuit judge in the case at
bar it was not necessary that the jury should find that
Stephenson had ever used or touched in any way the land

in controversy here, or paid taxes upon it, or asserted any dominion over it, if he had occupied and used any portion of the quarter section within which this 80 was included, under a deed of the whole. The mere occupancy of the north-west 40 acres, with no dominion exerted over the south 80, save what might be inferred from his deed, would not be sufficient to gain title by adverse possession. In such case there would be no notice, actual or constructive, to Turner, who holds the legal title, of any claim on the part of the defendant to the unoccupied 80. Turner might well suppose that Stephenson was only claiming title to the land actually occupied by him, or within the bounds of the smallest government subdivision. There would exist no circumstance or reason why Turner would be put on inquiry to ascertain whether his neighbors, living on and cultivating other parcels than his own, were claiming title to his lands.

Therefore it has been held that where a grantor embraced land to which he had no title in the same deed with that to which he had a title (as it is conceded the United States did in its deed to Stephenson), and the grantee entered upon and occupied that part only to which the grantor had a title, it did not operate as a disseizin of the owner of the other land described in the deed, *although such deed was duly recorded.* See 3 Washb. Real Prop. (5th ed.) marg. p. 498, and cases cited; *Hole v. Rittenhouse,* 25 Penn. St. 491; *Thompson v. Burhans,* 61 N. Y. 52, 69; *Tritt v. Roberts,* 64 Ga. 156.

We find no error in the record except as above stated. The judgment will therefore be reversed, and a new trial granted, with costs to plaintiff.

The other Justices concurred.