Pool v. Brown.

---

## POOL v. BROWN *et al., Appellants.*

1. **County Boundaries:** STATUTE. The boundaries between Bollinger and Stoddard counties, as fixed by the revision of 1855, were changed by acts of the legislature passed in 1857 and again in 1859. Subsequently, in the revision of 1865, the boundaries of Bollinger county were defined as contained in the act of 1859, but those of Stoddard were defined as contained in the revision of 1855. Afterwards, by an act of the legislature passed in 1868, the conflict between the two provisions of the revision of 1865 was removed and the boundaries made to conform to the act of 1859. *Held:* the legislature had the power to make the changes in the boundaries of the counties.

| 98 | 675 |
| 115 | 512 |
| 98 | 675 |
| 121 | 110 |
| 121 | 131 |
| 98 | 675 |
| 127 | 470 |
| 98 | 675 |
| 130 | 482 |
| 98 | 675 |
| 134 | 28 |
| 98 | 675 |
| 140 | 385 |
| 98 | 675 |
| f155 | 536 |
| 98 | 675 |
| 157 | 564 |

| 98 | 675 |
| e173 | ⁵450 |
| e173 | ⁵451 |
| e173 | ⁵452 |
| 173 | ⁵455 |
| 173 | ⁵458 |
| e173 | ³487 |
| 97a | ²391 |

2. **Statute: REPEAL: REVISION.** The bringing forward into the revision of 1865 the existing laws on that subject was simply a continuation of the law of 1855 as to the boundaries of Stoddard county and the law of 1859 as to the boundaries of Bollinger county, and the act of 1859 being repugnant to it, would have prevailed over it even if the act of 1868 had not been passed.

3. **Swamp Lands.** The grant of swamp lands by the federal government to the state was in trust; the trust, however, being a personal one and not running with the land.

4. **Statute: REPEAL OF SPECIAL LAW BY SUBSEQUENT GENERAL ONE.** The special law in reference to the sale of swamp lands in Bollinger county, approved February 21, 1857, was repealed by the general laws, approved March 27, 1868, and March 10, 1869, although not specially mentioned therein as repealed.

5. **County Court: SALE OF SWAMP LANDS.** The county court was authorized, under section six of the act of 1869 (Acts, p. 67), to sell swamp lands at private sale at a sum less than $1.25 per acre.

6. **Deed.** The fact that a deed contains an unauthorized covenant of warranty will not impair its effect as a conveyance of title.

*Appeal from Bollinger Circuit Court.*—Hon. J. D. Fox, Judge.

AFFIRMED.

*M. R. Smith* and *William Carter* for appellants.

(1) There was a special law regulating the sale of swamp lands in Bollinger county at the time of the sale to Judson Gardner, and the sale, made as it was under the general law, to said Gardner was invalid and void. Acts, 1856-7, p. 239; *State ex rel. v. McDowal*, 38 Mo. 529; *Smith v. Clark*, 54 Mo. 58; *State ex rel. v. Wesleyan*, 11 Mo. App. 373; Potter's Dwarris on Stat., p. 154, note 4; *City of St. Louis v. Alexander*, 23 Mo. 483. (2) The deed from Bollinger county to Judson Gardner, dated May 24, 1871, was void and should have been so held. Acts, 1868, p. 68, sec. 3; Acts, 1869, p. 66, sec. 6; *Hutchison v. Cassidy*, 46 Mo. 431; *Sturgeon v. Hampton*, 88 Mo. 231; *St. Louis Co. v. Sparks*, 10

Mo. 117. (3) The land in controversy was never in the limits of Bollinger county until after March 24, 1868, but prior thereto was a portion of Stoddard county, and the deed from said Stoddard county to the gravel road company, defendants' grantor, dated August 1, 1867, conveyed the fee simple title in said lands. G. S. 1865, p. 195, sec. 50; see also p. 210, sec. 103; Acts, 1868, p. 21; *Ashley v. Harrington*, 1 Chipman [Vt.] 348; *State ex rel. v. Heidorn*, 74 Mo. 410; Potter's Dwarris, p. 155. (4) The deed from the county of Bollinger to Gardner, dated May 24, 1871, and all mesne conveyances down to plaintiff, failed to convey a legal title whereon to bottom the action of ejectment. *Henry v. McKerlie*, 78 Mo. 431; *Wells v. Lincoln Co.*, 80 Mo. 431; *Evans v. Snyder*, 64 Mo. 516; Tyler on Ejectment, pp. 75, 76; *Ford v. French*, 72 Mo. 252; *Alexander v. Dougherty*, 81 Mo. 184. (5) *Qui prior est tempore potior est jure.* 1 Pomeroy's Eq. Jur., sec. 418; *Phillip v. Phillip*, 4 DeG. F. & J. 208, 215; *Davis v. Briscoe*, 81 Mo. 27; Snell's Equity, pp. 25, 27.

*Moses Whybark* for respondent.

(1) A revised act does not have the effect of making the revised law entirely original, nor is it to be construed as though none of its provisions had effect but from the date of the revised law. When a former provision is contained in a revised law it operates only as a continuance of its existence and not as an original act. *St. Louis v. Alexander*, 23 Mo. 483; *City of Cape Girardeau v. Riley*, 52 Mo. 424; G. S. 1865, chap. 224, sec. 5, p. 883; *Bishop v. Schneider*, 46 Mo. 472; *Fairchild v. Masonic Hall*, 71 Mo. 526. The last expression of the legislative will should prevail in case of conflict between it and a previous expression. And if such conflict appear in the revised statutes, the court must see which is the latest law, and administer it. The mere fact that the old law is incorporated in the revised

statutes along with the new one, does not give it vitality. This principle is well exemplified by the cases, namely : *State ex rel. v. Merchant's Exchange Society*, 72 Mo. 146 ; *State ex rel. v. Heidorn*, 74 Mo. 410. In case of an original statute it is said if the latter part be repugnant to the former part, it shall stand, and, so far as it is repugnant, be a repeal of the former part, because it was last agreed to by the makers of the statute. This is a purely arbitrary rule, to be applied only when all others fail, and then only as a necessity to harmonize the statute. It is used only in cases of irreconcilable repugnancy, and gives way to the fundamental principle, that the intention of the legislature is to govern. Sedgwick on the Construction of Statutes, pages 353 and 354. This being a revised statute, and not a new and original one, it will devolve on the court to harmonize it by ascertaining the intention of the law makers, and apply the rule that the latest law in point of time shall govern. The rule is that the intent must be followed. (2) Under the constitution of 1865, and the old constitution of Missouri, the legislature had full power to alter county lines at pleasure. *Abernathy v. Dennis*, 49 Mo. 468 ; *Barton County v. Walser*, 47 Mo. 189 ; Opinion of Judges on the Township Organization Law, 55 Mo. 189. (3) The special law entitled "An act in relation to swamp and overflowed lands in Bollinger county," approved February 21, 1857 (Sess. Acts, 1856 and 1857, page 239), was repealed by the general law of 1865, and especially by the act entitled an act in relation to swamp and overflowed lands, approved March 27, 1868, and the act approved March 10, 1869. Sess. Acts, 1868, pp. 68, 69; Sess. Acts, 1869, page 66.

BRACE, J.—The plaintiff's action is in ejectment for three detached tracts of land in sections 5, 8 and 17, in township 28, range 10, in Bollinger county. The

case was tried before the court without a jury, verdict and judgment for the plaintiff, from which defendant appeals.

The lands in controversy are part of the swamp lands granted to the state of Missouri by an act of congress approved September 28, 1850. The plaintiff claims title through mesne conveyances under a deed from Bollinger county, dated May 23, 1871, and under a patent from the state of Missouri to said county, dated August 4, 1869, executed by the governor and duly recorded in pursuance of an act of the general assembly, approved March 10, 1869. Acts, p. 66. Section 5 of that act makes this patent *prima facie* evidence of title in Bollinger county to the premises, if, at that date, they were situate in that county, which presents the first question on the record.

I. By an act of the general assembly, approved March 1, 1851 (Acts, p. 193), Bollinger county was organized out of territory theretofore forming a part of the counties of Wayne, Stoddard and Cape Girardeau. By the boundaries then established, made more definite by 1 Revised Statutes, 1855, page 471, the lands in controversy remained in Stoddard. By an act approved January 15, 1857 (Acts, p. 237), the boundary line between Bollinger and Stoddard counties was changed, and that part of the land in sections 5 and 8, west of Cane creek slough, was put in Bollinger county. By an act approved March 14, 1859 (Acts 1858-9, p. 304), the boundary line between these two counties was again changed, and all of said land put within the territorial limits of Bollinger county, and all the land so remained in Bollinger county until the revision of 1865. By chapter 34, title 11, of that revision (G. S. 1865, p. 185), defining the boundaries of all of the counties in the state, in alphabetical order, Bollinger (section 50) comes first, and its boundaries are defined as by the act of 1869, leaving this land in Bollinger

county. When we come to Stoddard county (section 103), we find its boundaries, however defined, as in the revision of 1855, by which this land would be still included within the boundaries of Stoddard. The conflict between the boundaries in these two sections, as they appeared in the revision of 1865, was removed by an act amending section 103, chapter 34, approved March 24, 1868, by which the line of Stoddard county was made to conform to the line of Bollinger, as defined in section 50 of the revised act, and the previous acts cited. And this line has ever since been the boundary between the two counties.

As between the state and the counties, there can be no question that the legislature had the power to make these changes in the boundary line between these counties. 55 Mo. 295; 49 Mo. 468; 47 Mo. 189. And the title to these lands having, by act of November 14, 1857 (Acts Adj. Sess. 1857, p. 32), been vested in the counties "in which they may lie" by legislative grant, and being in Bollinger at the time the patent from the state issued, the title of the state passed to Bollinger county, and the patent was *prima facie* evidence of that fact, subject, however, to any vested right that may have been acquired by any person or corporation from the state or Stoddard county, while the lands constituted a part of the territory of said county.

As bearing upon another branch of the case, it may be as well here to announce the conclusion that these lands have been within the territorial limits of Bollinger county ever since March 14, 1859, where they were so placed by the act of that date, which is the last original expression of legislative will on the subject. The carrying forward into the general statutes of the existing laws on that subject was simply a continuation of the law of 1855, as to the boundary of Stoddard and the law of 1859, as to the boundary of Bollinger, and the last act, being repugnant to and inconsistent with the

former, it must prevail.   G. S. 1865, p. 883, secs. 5, 6 ;
*City of Cape Girardeau v. Riley*, 52 Mo. 428 ; *City
of St. Louis v. Alexander*, 23 Mo. 483.   And so it
would have been held even if the legislature had not, at
a subsequent session, corrected the evident mistake in
the boundaries of Stoddard county made by simply
copying them from the Revised Statutes of 1855, without
regard to subsequent legislation by which the boundary
was changed.

II.   By section six of the act of March 10, 1869
(Acts, p. 67), under which this land was patented to the
county by the state, it is provided that : " The several
county courts shall have full power and control over all
* * * swamp lands patented to their respective
counties under the provisions of this act, and to sell and
dispose of the same with like effect as now provided by
the general statutes in relation to the conveyance of
other real estate belonging to their respective counties."
The deed from Bollinger county, under which the plain-
tiff claims, was made in execution of this power and the
power granted by section 9, General Statutes, 1865,
page 556, by a commissioner appointed by the county
court of said county under the provisions of section 4,
page 444, General Statutes, 1865, in pursuance of a sale
made by order of the county court of said county to
Judson Gardner, and was effective to pass the title of
the county to said grantee, if the law of 1869 applied to
the swamp lands situate in the county of Bollinger.
*Prior v. Scott*, 87 Mo. 303.

It is contended for the defendant that it did not,
for the reason that at that time, there was an unrepealed
special law regulating the sale of swamp land in said
county, the terms of which it is conceded were not com-
plied with.   The grant of these lands by the general
government, to the state was in trust.   The trust how-
ever has been held to be a personal one, not running with
the land.   *Dunklin County v. District Court*, 23 Mo.

449. In the execution of this trust prior to the year 1868, very many laws were passed, both general and special, making provision for the sale of these lands, in the several counties of the state, vesting in the counties by legislative grant the title thereto for that purpose, prescribing the manner in which the lands should be sold, and providing in some special instances for the execution of deeds or patents by the counties, through some of its officers, but by the general law providing for the issuance of a patent to the purchasers by the state upon certificates of the officers showing payment of the purchase money. Among others, by an act approved February 21, 1857 (Acts, p. 239), a special mode of selling the swamp lands in Bollinger county was provided. The lands were to be sold by a register appointed for that purpose and a deed from the county to the purchaser was to be executed by the county clerk upon the payment of the purchase money. It appears from the evidence in this case that Bollinger county took no action and sold none of its swamp lands under this law; that prior to the patent from the state, the land was sold by the county court and the sale certified to the governor, and a patent issued to the purchaser. By a general law, approved March 27, 1868 (Acts, 1868, p. 68, sec. 5), revising and amending the act of 1865, it was provided: "In order to perfect the title to swamp lands issued by the county courts, the clerks of the various county courts shall immediately furnish to the register of lands an abstract of all the sales made by the county courts of swamp and overflowed lands in their respective counties since the fourth day of November, 1857, and upon certificate of the clerk that full payment has been made of the principal and interest, the register of lands shall issue a patent," etc. This was a remedial provision, applicable to all those counties in which the county court had previously been authorized by special enactments to make conveyances,

and was the last law passed which contemplated the issue of a patent by the state to the purchaser. By the act of March 10, 1869, *supra*, the whole previous system of the state in regard to these lands was changed, by general law applicable to every county in the state by which a complete title was to be vested in each county by a patent to be issued for the swamp land therein situate, and thenceforth the state delegated to each county the execution of its trust as to the land situate in each county under the general law as expressed in this act and the act of 1868, *supra*, which in the main has since remained the general law of the land governing the sale and transfer of title to the purchaser of swamp lands. Under this law, the plaintiff's remote grantor acquired his title from the county of Bollinger, and in view of the vast number of special acts upon the subject to be found in preceding statutes the relation the state sustained to these lands, the relation that the counties as political sub-divisions of the state for governmental purposes sustained to the state, the history of the legislation on the subject, the contemporaneous construction and action of the officers of the government, both state and county, the comprehensive and exclusive nature of the terms of this law, the evident purpose to revise the whole subject-matter and prescribe a general rule for its future government, we have no difficulty in reaching the conclusion that the special law in regard to Bollinger county was comprehended within the repealing clauses of the Acts of 1868 and 1869, *supra*, although not specially mentioned therein, as was not any other special law on the subject, and that thereafter the swamp lands in said county were subject to sale and conveyance by the county under the provisions of the general law expressed in those acts.

III. Several objections are urged to the validity of the deed from the county under this general law, none of which, however, do we think are sufficient to invalidate

the deed. They may be answered *in solido* as follows: The county court had power to sell the land therein described at private sale to such purchaser as to it might seem advisable at a price less than $1.25 per acre upon the terms upon which sale was made. *Linville v. Bohannon*, 60 Mo. 554; Acts, 1869, p. 67, sec. 6. The limitation of section 3 of the act of 1868 (Acts p. 69), as to price applies to public sales of swamp lands, and this limitation had expired by lapse of time before this sale was made. The deed was sealed, executed and acknowledged in substantial compliance with the requirements of the law, and was properly admitted in evidence, and its effect was to vest in the grantee all the title of Bollinger county in the lands in controversy. The fact that it contained an unauthorized covenant of warranty would not impair its effect as a conveyance of title. *Henry v. Atkison*, 50 Mo. 266.

IV. To overcome this title, the defendants rely upon a deed dated August 1, 1867, from Stoddard county, by commissioner, to the Cape Girardeau & Bloomfield Macadamized and Gravel Road Company, a deed from said company to the Cape Girardeau Railroad Company, dated August 23, 1881, and a deed from said railroad company to the defendants, dated October 24, 1881. But, as we have seen, on the first of August, 1867, these lands were within the territorial limits of Bollinger county, and Stoddard county had no title to, or power to convey them, all legislative grants of these lands being to the counties within which they lie, and subject to the right of the state, at pleasure, to change, the boundaries of the counties. And unless the deed from Stoddard county was made in pursuance of a contract made with the gravel road company prior to March 14, 1859, while these lands were in said county, under which the said company acquired a vested right to them, the deed from that county conveyed no title to the gravel road company. The evidence entirely failed to

show any such contract. By the act incorporating the gravel road company, approved October 26, 1857 (Acts, p. 269), Stoddard county was authorized to subscribe twenty thousand dollars "of the swamp land belonging to said county, or the proceeds thereof, for the purpose of carrying this act into effect." The only attempt made to exercise the power conferred by this act prior to March 14, 1859, was an order of the county court, setting aside twenty-five thousand acres of the swamp and overflowed lands belonging to said county to be applied, or the proceeds thereof, to the object of making said road, the only evidence of which is contained in an order of the county court entered in 1866, reciting an old order of said court, the record of which was destroyed, said to have been made on the seventh of April, 1858, the failure of the company to comply with the provisions of said act, and setting aside said order and withdrawing said lands from the reservation of said old order. The only act performed under said old order was a selection of the swamp lands by S. G. Kitchen, selecting agent appointed by the court for that purpose, made September 20, 1860, and reported to the court upon which no action was taken and which did not include any of the lands in controversy. It is unnecessary to pursue the action of the county court and the company in regard to the swamp lands of Stoddard county after the year 1866. The plaintiff, on the evidence, showed a clean legal title to the premises from Bollinger county acquired in good faith. The defendants failed to show any title whatever from said county, and no title, either legal or equitable, or any vested right, whatever, in the land acquired by them, or those under whom they claim, from Stoddard county at any time when the premises were within the territorial limits of that county.

The judgment is for the right party and is affirmed. All concur.