92    573
s52NW1026
133    280
92    573
145    374

REBECCA J. CLARK ET AL. v. ARCHIBALD CAMPAU ET AL. (ORIGINAL BILL), AND WILLIAM M. BLAY AND GEORGE A. DUPUIS v. REBECCA J. CLARK ET AL. (CROSS-BILL).

*Adverse possession.*

This case is held to come clearly within *Murphy v. Doyle,* 37 Minn. 113, cited in *Turner v. Stephenson,* 72 Mich. 412, and the decree quieting the title of defendants to the land in controversy, based upon a finding that such title had been established by proof of a continued, open, notorious, and adverse possession for more than 20 years before complainants' bill was filed, is affirmed.

Appeal from Wayne. (Hosmer, J.) Argued June 16 and 17, 1892. Decided July 28, 1892.

Bill to quiet title. Complainants appeal. Decree affirmed. The facts are stated in the opinion.

*T. E. Barkworth,* for complainants (defendants in cross-bill)..

*Larned & Larned* (*Ervin Palmer,* of counsel), for defendant Campau.

*Sidney T. Miller* (*John H. Bissell* and *James C. Smith, Jr.,* of counsel), for defendants Blay and Dupuis (complainants in cross-bill).

McGRATH, J. Complainants, as heirs at law of George Clark, filed this bill in June, 1889, to quiet title to certain marsh lands fronting on Detroit river, in the township of Ecorse. They claim under a deed executed May 31, 1845, to George Clark and Shadrach Gillett. Gillett, in 1852, quitclaimed to Clark. The first-named deed was not recorded, but is alleged to have been lost. The deed from Gillett to Clark was recorded, and describes the property, with other fishing property, as follows:

"The Stony Point fishery, situate in the township of Ecorse, in the county of Wayne, the same being conveyed to the parties hereto, by Aaron Allen and others, May 31, 1845; also Grassy Island fishery, lying in Detroit river, opposite Fighting island, and the pier, fish-pond, and houses, the same being conveyed to the parties by Charles Brown; also Fighting Island fishery, on Fighting island, opposite Grassy island; also Fighting Island fishery, known as the 'Reaumil Fishery,' lying in the east channel of the Detroit river; also Presque Isle fishery, near the head of Detroit river, conveyed to the said party of the first part from Isadore Moran, bounded on the west by lands owned by Joseph Campau, on the east by lands owned by Michael Caderens, with pier and other improvements; also a fishery adjoining the above, and the pier; also Fort Gratiot fishery, situated in the rapids at Fort Gratiot, with all seines, boats, and fishing apparatus belonging to each fishery above described."

Whatever rights were acquired by Gillett and Clark were evidently acquired for fishery purposes. They occupied the fishery jointly until 1852, and Clark con-

tinued to occupy it until 1866 or 1867. The following
sketch will explain the situation:

The fishery was situated on point A, and consisted of a few spiles and a crude wharf and other incidents at that place.

Complainants claim that Clark possessed and owned that portion of private claim 226 lying easterly from the Aux Vose creek or river, and south-west of private claim 42, embracing in all 118 acres, including a few acres of higher land in the north-west corner of the tract, upon which there was some timber. It is claimed by complainants that Clark used the point and a portion of the Aux Vose creek for fishing purposes, cut the timber upon and pastured the higher ground, and paid taxes from 1845 to 1867, inclusive, upon the whole tract. In 1863 the fishery was abandoned by Clark, although he rented it to another party for one year immediately thereafter. The fish house and wharf were shortly afterwards consumed by fire, leaving nothing but the spiles to mark the spot of former operations. It does not appear that, after 1867, Clark paid the taxes or exercised any other act of ownership over any part of the property.

In 1866, Jacob M. Howard conveyed to Archibald Campau this 118 acres of land, "but excepting the parcel of land heretofore deeded by quitclaim deed to Shadrach Gillett and George Clark, if included in the foregoing description, said quitclaim being supposed to bear date May 31, 1845, referred to in deed from said Shadrach Gillett to George Clark, dated March 15, 1852." It is clear from this record that, soon after procuring this deed, Archibald Campau began to exercise acts of ownership over this land, and to assert his ownership. One witness says that "over 20 years ago" Campau and Clark had a quarrel at a caucus about the land, Campau claiming that he had bought it, Clark claiming ownership, and that Campau had taken forcible possession. Another witness, who was supervisor in 1867, says that Clark told

him to assess the land to Campau; that Campau had bought the land, and owned it; that it did not belong to him (Clark); that he (Clark) had been paying taxes there for the use of the fishery, but the fishery did not pay any more, and he was going to move, or had moved, his truck away from there. Another witness, who owned a piece of land adjoining, says that, in 1866 or 1867, he wanted to buy a strip of this land, and, to make sure, he asked Clark if it would be safe to buy it from Campau, and Clark said, "Yes; that land belongs to Campau." Another witness says Campau has been cutting timber and pasturing the land for 21 years, and witness had pastured a cow there from 15 to 18 years ago, by permission from Campau. Another witness has occupied and tilled the land for the past 8 years, renting it from Campau; has pastured his cattle on the land by Campau's permission for 16 years, and wood has been chopped on the land by Campau for the last 16 years; witness bought timber from Campau and chopped it 12 years ago. Another witness chopped firewood for Campau 9 years ago. Another owns adjoining land, and since 1870 Campau has assisted in keeping the line fences in repair. Another witness has trapped on the land for 22 years, and paid Campau $10 per year for the privilege. Several witnesses testify to the cutting of the marsh grass in the winter by Campau for bedding.

The tax descriptions are very imperfect. From 1847 to 1855, inclusive, 118 acres of the south part of private claim 226 was assessed to Clark, in 1856 but 100 acres, and from 1857 to 1863, inclusive, but 50 acres is assessed to him. During the same time, 120 acres of the north part of private claim 226 is assessed to Howard. Campau's name first appears on the roll in 1866, when he is assessed for 120 acres of the north part of private claim

92 MICH.—37.

226. From 1867 to 1872, inclusive, he is assessed for the north part of private claim 226, north of the River Aux Vose, 118 acres. This much is clear, however, that Clark's name was dropped from the roll in 1866 or 1867, and the intention was to assess the parcel upon which he had been paying to Campau.

That Campau claimed to own this land seems to have been notorious. Clark, who died in 1877, lived in the immediate neighborhood, and passed in sight of this land several times each week. He knew that Campau asserted ownership, and was exercising acts of ownership; yet for 10 years Clark took no steps to test Campau's claim or to enforce his own claims.

But it is insisted that the doctrine of constructive possession cannot extend such possessory acts as were shown to the entire tract, and it is said that Clark's possession of the fishery is conceded. There is no analogy between the present case and the case of *Turner v. Stephenson,* 72 Mich. 409. There the parcels of land were distinct.

"The 80 acres claimed by plaintiff, and the 80 acres, upon the west 40 of which the defendant made his occupation, are distinct tracts of land, and so regarded by the general government, the source of the original title."

Here the tract bounded by the Detroit and Aux Vose rivers and private claim 42 was one distinct tract. It had been surveyed separately, taxed separately, and occupied separately. There had been no subdivisions of the parcel.

The exception in the deed from Howard to Campau was undoubtedly made solely because of the existence upon the record of the quitclaim from Gillett to Clark. Complainants do not attempt to show what description

the deed to Gillett and Clark contained, or what land that deed conveyed, except as it might be inferred from the distinctive character of the parcel, and the same class of possessory acts by Clark from 1845 to 1867 as are shown by Campau from 1867 to 1889. The Stony Point fishery lands have never been carved out of the 118 acres. The theory of complainants is that these lands included the entire 118 acres, and they offer the survey, the tax rolls, the fence across the high lands prior to 1867, and Clark's acts confined to the fishery, the Aux Vose river, and the highlands. These are the only means by which they undertake to show the limit and extent of the alleged grant to Gillett and Clark. At the outset, when Campau first asserted his ownership, he and Clark had a quarrel, both asserted ownership, and Clark insisted that Campau had taken forcible possession. Of what? Not of any distinct parcel which had been carved out, and which was less than the whole. Howard had avoided even the appearance of conflict, but Campau threw down the glove. He asserted that Clark had no title. Clark nowhere claimed less than the entire tract, nor that he had any other or different title or claim to a part than he did to the whole. In view of the fact that Campau assailed the claim then made, he cannot be held to have excepted from his claim of ownership some imaginary tract which Clark did not then, and complainants cannot now, define. There is nothing in the record to show that Campau did not measure the area of the Stony Point fishery lands with the same rule that Clark measured them. Clark drew the lines, and there is nothing to show that Campau either changed them or intended to alter them. Campau's claim must be held to be coextensive with that asserted by Clark. The possessory acts related to a distinct parcel of land, taxed as one description, known as one tract, and separated

from the balance of the private claim by a recognized stream, appearing upon all plats and maps of the territory. Aside from the acts done upon portions of the land, privileges upon the whole tract were leased, hay was cut upon it without reference to any particular tract, and the taxes were paid upon the whole.

The case comes clearly within *Murphy v. Doyle*, 37 Minn. 113, cited in *Turner v. Stephenson*, 72 Mich. 412. The learned circuit judge was correct in his conclusions that the title of defendants had been established by continued, open, notorious, and adverse possession of said lands for more than 20 years before the filing of the bill herein. It is therefore unnecessary to consider the other questions raised.

The decree below is affirmed, with costs to defendants.

MORSE, C. J., LONG and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.