# W. C. KEATON, Appellant, v. PAUL HAMILTON et al.

### Division One, April 1, 1915.

1. **COUNTY LINE: Judicial Notice.** The court should take judicial notice that all that part of section 7 in township 24 of range 13 lying west of Little river was in 1869 in Stoddard county. By whatever name Whitewater, made the boundary between New Madrid and Stoddard counties in that vicinity, is now known, somewhere along its course it becomes Little river, and was the river by which the boundary line between the two counties was fixed by the Act of 1868, until it was changed by the Act of 1872, by which the county line was removed to the west line of said section 7.

2. **SWAMP LANDS: Ringer Patents: County Warrants as Consideration: Estoppel.** The various decisions of this court holding the Eltzroth patents of certain swamp and overflowed lands in Stoddard county to be valid and to have conveyed the legal title to the grantee, have now become a rule of property; and the execution by the said Eltzroth, special commissioner, of the patent of 1869 to Lewis M. Ringer, for which the county received in payment warrants worth to it their face value and equal to the consideration expressed, being within the powers of the county, and the instrument showing upon its face that the power was well executed, the county, by retaining the consideration for thirty years thereafter and by failing to disturb the status, ratified the transaction, and is estopped to question the grant; and no one claiming adversely to the said Ringer or his grantees will be permitted to assert any equity in the county.

3. **TAX DEED: Suit Against Record Owner by Initials.** Where the title stood upon the record in the name of Lewis M. Ringer, and notice was given by publication to and judgment by default was rendered against L. M. Ringer, a sheriff's deed, made in pursuance to said judgment, conveying the title and interests of L. M. Ringer, did not convey the title of Lewis M. Ringer.

4. ————: **Three-Year Limitation: Application.** The act of March 30, 1872, Laws 1872, p. 130, providing that an action to avoid or defeat a sale or conveyance of land for taxes must be brought within three years, has no application to a sheriff's deed made under the Act of April 22, 1877, relating to the collection of delinquent taxes.

5. **LIMITATION: Thirty-Year Statute: Lawful Possession for One
Year.** Section 1884, Revised Statutes 1909, requires that in
order for it to constitute a bar the land shall have been in the
lawful possession of the person claiming adversely to the legal
title for one year prior to the bringing of the action; and in
order that such claimant may interpose that statute as a de-
fense, it is necessary for him to show there was some condi-
tion that the law will construe as possession, either actual
or constructive. Actual possession for seven months prior to
bringing the action is not a sufficient defense. Nor will the
possession and cultivation of forty or fifty acres in another
section, between which and the land in suit there intervenes
an unfenced square mile of swamp and woods, although des-
cribed in the claimant's invalid deed, nor will the selling of
some timber off the unfenced land in suit or the pasturing of
cattle thereon, support the running of the statute or authorize
the presumption of notice to the true owner that his possession
was interrupted or his title in danger.

6. **LACHES: Adverse Possession.** The doctrine of laches is not
applicable to a suit to quiet title to land, where the whole
question relating to the loss of the legal title is dependent upon
the non-payment of taxes and lawful possession for one year
under the thirty-year limitation statute.

7. **CONVEYANCE: Under Seal: Scroll.** A recital in the testi-
monium clause that the deed is given under the hand and
seal of the maker is a sufficient showing that the instrument was
sealed, whether or not its record shows a seal was actually
attached.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C.
Walker,* Judge.

REVERSED AND REMANDED.

*Brewer & Riley* for appellant.

(1) The court will take judicial knowledge that
the land in question was on the 6th day of May, 1869,
in Stoddard county. Woods ex rel. v. Henry, 55 Mo.
563; Parker v. Burston, 172 Mo. 87; 17 Am. & Eng.
Ency. Law (2 Ed.), pp. 912-3; State v. Pennington, 124
Mo. 321; 1 Greenleaf on Evidence (6 Ed.), p. 10. (2)
The land in question being in Stoddard county on the
6th day of May, 1869, and at that time belonging to

Stoddard county and being on that day conveyed to Lewis M. Ringer, the change of the county boundary between New Madrid and Stoddard counties in 1872, putting this land in New Madrid county, a patent from the State of Missouri to New Madrid county and a patent from the county to John H. Himmelberger, under which defendant claims, conveyed no title, and did not affect the title acquired by said Lewis M. Ringer under the said patent issued on May 6, 1869. And it makes no difference that the said patent to the said Ringer was not after the change of said boundary line filed for record in the office of the recorder of deeds in New Madrid county. Mosher v. Bacon, 229 Mo. 338. (3) The judgment against L. M. Ringer for taxes and the deed issued thereunder were void and conveyed no title, for the reason the patent issued on May 6, 1869, by Stoddard county to Lewis M. Ringer and not to L. M. Ringer. Shuck v. Moore, 232 Mo. 656. (4) The defense of laches is not available to the defendants. Hayes v. Schall, 229 Mo. 124; Bales v. Perry, 51 Mo. 449; Kingman v. Graham, 51 Wis. 232; Mayo v. Cartwright, 30 Ark. 407; Throckmorton v. Spence, 121 Mo. 50; Dameron v. Jamison, 143 Mo. 491. (5) The possession of land in section 19, which is about one mile from the land in question, is not possession of the land in question, so as to make the thirty-year Statute of Limitations or any other statute applicable. Shultz v. Lindle, 30 Mo. 309; Leeper v. Baker, 68 Mo. 403. (6) The thirty year Statute of Limitations will not avail the defendant in this case for the reason that there was no one year's possession of the land in question next before the filing of this suit and the suit in ejectment by the plaintiff herein against George Church, the tenant of the defendants. Fairbanks v. Long, 91 Mo. 632; Campbell v. Greer, 209 Mo. 215. (7) The three-year Statute of Limitations, Sec. 11506a, R. S. 1909, has no application to this suit, for the reason that the land in question was not sold for taxes under

the revenue laws of 1872, but under the present law. Williams v. Sands, 251 Mo. 165; Blodget v. Shaffer, 94 Mo. 672; Bartlett v. Kander, 97 Mo. 361; Allen v. De-Groodt, 98 Mo. 162; Bird v. Sellers, 122 Mo. 32; Vastine v. Land & Im. Co., 135 Mo. 150. (8) The title to the land in question is what is known as the "Ringer title" which said title has been held by this court to be a valid title. Simpson v. Stoddard County, 173 Mo. 421. (9) The patent issued to Lewis M. Ringer by Alfred Eltzroth, Commissioner, dated May 6, 1869, being valid on its face and having been recorded in the deed records of Stoddard county, on May 10, 1869, and the plaintiff having acquired by deed the interest conveyed to said Ringer by said patent, could be attacked only by a suit filed for that purpose either by the county of Stoddard while said land remained in said county or by New Madrid county after said land was by the Act of 1872 put in New Madrid county. Brinkerhoff v. Juden, 255 Mo. 698.

*Wammack & Welborn* for respondents.

(1) The title to the land in controversy was in New Madrid county on the 6th day of May, 1869. (2) The purported patent signed by Alfred Eltzroth is void because the orders upon which it is based are void. Bayliss v. Gibbs, 251 Mo. 492; Brinkerhoff v. Juden, 255 Mo. 698; Railroad v. Hatton, 102 Mo. 55; Wheeler v. Land Co., 193 Mo. 279; Senter v. Lumber Co., 255 Mo. 590. (3) This case is clearly distinguishable from the cases of Simpson v. Stoddard County and Brinkerhoff v. Juden for the following reasons: (a) The Eltzroth patent offered in evidence is not sufficient on its face to convey title, because it is not under the seal of the commissioner. (b) Said patent has never appeared of record in the land records of New Madrid county. (c) In this case the persons attempting to hold title under this patent are themselves the ones who

have been guilty of laches, and who have never paid any taxes on this land. (d) Said purported conveyance is not in anywise benefited by the curative act of 1901. (4) Respondents' title is good under the thirty-year Statute of Limitations. Nall v. Conover, 223 Mo. 477; Collins v. Pease, 146 Mo. 140; Farris v. Bayliss, 122 Mo. 123.

BROWN, C.—Suit instituted in the circuit court for New Madrid county, July 13, 1910, by petition to ascertain and determine the title to all that part of section seven of township twenty-four of range thirteen lying west of Little river in New Madrid county. The petition included Paul Hamilton, Albert M. Wiles, William P. Richards, the respondents in this appeal, as defendants. It stated that the land was wild and uncultivated, and not in the actual possession of any one. The cause was transferred by change of venue to the circuit court for Stoddard county, where it was tried without a jury during the March term, and on April 27, 1911, and at the September term the court entered its judgment declaring the title to be in said defendants, from which plaintiff took this appeal.

The first paragraph of the answer is as follows:

"Come now the defendants in the above entitled cause, leave of court first having been obtained, and for answer to plaintiff's petition herein deny each and every allegation therein contained except claiming to be the owner of the lands involved, and pray judgment."

It then proceeds in separate paragraphs and as distinct defenses to claim title as follows: First, by adverse possession under color and claim of title for more than ten years; second, by the lapse of thirty years without payment of taxes and adverse possession for one year as provided in section 1884, Revised Statutes 1909; third, estoppel by laches in failing to pay taxes for more than thirty years, while defendants

have paid taxes for "many years," and drained and made other valuable improvements on said land; fourth, under a sheriff's sale for taxes by the sheriff of New Madrid county, and the lapse of more than three years since its execution until the bringing of this suit.

The land is a part of the swamp and overflowed lands granted by the United States to the State of Missouri by the Act of Congress approved September 28, 1850, and by the State of Missouri to Stoddard county by act of the General Assembly approved February 23, 1853. [Laws 1853, p. 108.]

Plaintiff introduced in evidence an order of the county court for Stoddard county appointing Alfred Eltzroth a special commissioner to make certain patents, as follows:

"Whereas an order of compromise has this day been made by this court with Lewis M. Ringer and others who purchased swamp lands at the sale made by the sheriff of Stoddard county, Missouri, at the September term A. D. 1868 of the circuit court of said county, on a judgment and execution in favor of Lewis M. Ringer and against said county, now, therefore, in order to carry out the provisions of said order of compromise in good faith, it is ordered by the court that Alfred Eltzroth be and he is hereby made, constituted and appointed special commissioner for and on behalf of said county of Stoddard, to make, execute, acknowledge and deliver to said parties mentioned in said order of compromise, letters-patent for the lands alluded to in said order according to the provisions therein set forth."

Also a patent duly acknowledged as follows:

"State of Missouri, County of Stoddard, ss.

"To all to whom these presents shall come—Greeting: Whereas Lewis M. Ringer of Stoddard county, State of Missouri, made full payment to the said county of Stoddard for the following described lands: All

west of river of section 7, township 24, range 13-125 acres. [Here follows a description of other lands.] Containing in the aggregate one thousand three hundred and thirty-one and 25/100 (1331.25) acres according to the official plat of the survey of said lands returned to the General Land Office by the Surveyor-General, which said tracts have been purchased by the said Lewis M. Ringer. Now, Know Ye, that the said county of Stoddard, in consideration of the premises and in conformity with the laws of said State of Missouri in such cases made and provided, have Given, Granted, Bargained, Sold and Conveyed and by these presents do Give, Grant, Bargain, Sell and Convey unto the said Lewis M. Ringer and to his heirs and assigns forever the above described lands granted by the Government of the United States to the State of Missouri and by said State of Missouri to said county of Stoddard. To Have and to Hold the above-described Lands with all the rights, privileges, immunities and appurtenances thereto belonging unto the said Lewis M. Ringer and to his heirs and assigns forever.

"In Testimony Whereof, I, Alfred Eltzroth, Special Commissioner, duly appointed by the county court of said Stoddard county to sell and dispose of the above described lands belonging to the said county of Stoddard for and in behalf of said county have caused these letters to be made patent. Given under my hand and seal as commissioner aforesaid at Bloomfield in said county, this 6th day of May, 1869.

"ALFRED ELZROTH,
"Special Commissioner."

Also quitclaim deed dated June 28, 1909, from the widow and heirs of Lewis M. Ringer, who died in Spokane, Washington, in March of the same year, to plaintiff. Also a quitclaim deed dated April 6, 1909, from P. W. Kimball and W. A. Harvey to plaintiff.

The defendants introduced patent dated August 24, 1875, from the State of Missouri to New Madrid

county, granting the lands in question; and also a patent dated May 25, 1899, from New Madrid county to John H. Himmelberger, conveying the same land. Also deed from Himmelberger and wife to Chas. M. Smith, dated June 21, 1900. Also deed from Chas. M. Smith and wife to Richard T. Allison dated December 27, 1902, and a deed from Ora Allison and others, trustees under the will of Richard T. Allison, deceased, dated December 6, 1906, conveying this, with a large quantity of other land (aggregating eleven hundred and fifty acres) in sections eighteen, nineteen and twenty in the same township and range, to the defendant Paul M. Hamilton; also deed from the widow of Allison dated December 1, 1906, purporting to convey the same land to the same grantee; also deeds from defendant Hamilton and wife dated December 4, 1906, to defendants Wiles and Richards conveying to each an undivided fifth of all the lands last described.

Defendants next offered a deed from the sheriff of New Madrid county to Charles M. Smith dated June 5, 1890, purporting to convey the interest of "L. M. Ringer" in the same lands in suit under a judgment for taxes rendered September 20, 1889, in the circuit court of New Madrid county, for delinquent taxes of 1884-1887 in the amount of $9.35, and costs amounting to $15.70. The record of this suit was in evidence showing that the judgment was rendered by default against L. M. Ringer, in a suit naming the defendant by the same initials only, and that notice was given of the suit by publication only, in the same name.

The defendants also introduced the order of the county court of Stoddard county made at a special term held in April, 1869, appointing Eltzroth special commissioner to execute and deliver for and on behalf of said county the patent in evidence and others growing out of the same transaction. This order is the same that was before the court in Simpson v. Stoddard County, 173 Mo. 421, and is fully set forth in the opin-

ion in that case. It is therefore unnecessary to incumber this opinion with a copy.

Ringer removed from Stoddard county to Eugene City, Oregon, in 1869, where he lived two years. He then went back to Stoddard county and remained about one year. In the summer of 1875 he moved with his family to Whitman county, Washington, where he continued to reside up to the time of his death. While he lived in Stoddard county he was sheriff three terms. Neither he nor any one claiming under or through him, unless it may be said that these defendants so claim, ever paid any taxes on this property from the time he left the State, so far as is shown by the evidence, and it is affirmatively stated in the testimony of Mr. Smith, the purchaser at the tax sale, that he had the books examined covering fifteen years before that time and found the taxes that had accrued during all that period unpaid. The taxes from and including 1884 were recovered in the judgment under which he purchased, leaving previous taxes unpaid. Mr. Smith paid the taxes accruing subsequently to those sued for, to and including 1902, when he sold the land; and there is no question as to their subsequent payment by those claiming through him.

In 1905 and 1906 a drainage district was organized, including about thirty-six acres of this land south of the railroad, and in 1909 ditches had been dug which drained the water from it. Before this the water had stood on it in winter from one to two feet deep. In December, 1909, the defendants made a contract for clearing about thirty-six acres so drained for ten dollars per acre, and it was subsequently cleared and fenced and a six-room house and log barn built on it. In 1907 Mr. Hamilton sold about $350 worth of timber, a part of which was taken from this land. This he states was the last timber he sold. He also used it for pasture in connection with the other land, but the record is entirely silent as to the dates or extent to

which this was done. The whole tract seems to have been timber land.

At the time Mr. Smith bought the land there was a tract of forty or fifty acres fenced and in cultivatiou in section nineteen, which is still an independent clearing occupied by tenants who have raised crops there continuously. No use was made of the other land in connection with this.

The plaintiff bought the land for cash from the Ringer heirs, paying them seventy-five dollars for the one hundred and twenty-five acre tract in controversy.

In rebuttal the plaintiff introduced in evidence a petition in ejectment filed June 23, 1910, in a cause wherein he is plaintiff and George Church, who is admitted to have been the tenant in possession, is defendant.

The court refused the request of plaintiff to declare the law to be that laches constituted no defense to the plaintiff's action, or that neither the plaintiff nor those under whom he claims are or were guilty of laches. It did declare, however, as follows: (1) That the land in question was, on the sixth day of May, 1869, in the county of Stoddard; and that it was the duty of the court to take judicial notice of that fact. (2) That the Ringer patent conveyed to him the land in question. (3) That the ten-year Statute of Limitation did not bar the action. (4) That the patent of the State to New Madrid county did not convey the title. (5) That the patent to Himmelberger conveyed no title to him. (6) That the sheriff's deed for taxes to Smith and Matthews was void. There was no declaration referring to the thirty-year limitation.

I. We agree with the trial court that it was its duty to take judicial notice that the land in question was in Stoddard county at the time of the execution of

County Line:
Judicial Notice.

the Eltzroth patent to Ringer. The Act of March 24, 1868, defining the boundary line between New Madrid and Stod-

dard counties describes that portion of it extending southerly from the point where the north line of section thirty-four, township twenty-six of range fourteen extended west reaches the Whitewater river as running "down the middle of the main channel thereof until it strikes the middle of township twenty-three." The Whitewater, which flows southerly to the northeast corner of Stoddard county, becomes at some point along the east line of the county north of the land in question, Little river. Now, when or where the transformation takes place the writer does not know, but it is unquestionably the same stream whatever may be its name, and it awaited many years the suggestion of respondents that the Legislature, in calling it the Whitewater, had obliterated the boundary line between Stoddard and New Madrid counties. Being the same, by whatever name it is described, it follows necessarily that any portion of section seven in township twenty-four of range thirteen which lies west of it was, from the time of the passage of the Act of 1868 until it was changed by the Act of 1872 removing the county line to the west line of the same section, in Stoddard county.

II. One of these Eltzroth patents in the same form, depending upon the same authority for its execution, and standing upon the same record of the Stoddard County Court and the same facts for support, was before us for adjudication in **Eltzroth Patents to Lewis M. Ringer.** Simpson v. Stoddard County, and Himmelberger v. Stoddard County, 173 Mo. 421. In that case we held, as had been ruled by us in Pool v. Brown, 98 Mo. 675, that under the Act of March 10, 1869, "in relation to swamp and overflowed lands" (Laws 1869, p. 66), the county court had power to sell such lands at private sale at prices less than $1.25 per acre; that the only instrument relating to the sale of this land that was entitled to a place upon

the land records of Stoddard county was the one that evidenced the sale of the land, that is to say the Eltzroth patent, for which the county received $13,500 in warrants worth to it the face value. The execution of this grant being within the powers of the county, and the instrument showing upon its face that the power was well executed, it might and did, under the circumstances of that case, by retaining the consideration for thirty years, and failing to disturb the status, ratify the transaction, and was estopped from questioning its grant.

It is unnecessary to review the elaborate reasoning of that case, for it has been followed, and its doctrine, so far as applicable to this case, approved in Senter v. Lumber Company, 255 Mo. 590, 592, 593; Brinkerhoff v. Juden, 255 Mo. 698, 720-21; Wilson v. Drainage District, 257 Mo. 266, 290; and in Bryan v. McCaskill, decided in this Division at the present term, in which the same instrument was the subject of our consideration. These decisions have become a rule of property upon which those interested in the same and similar transactions have a right to depend. The malign element of fraud, which avoids all grants and contracts, at law as well as in equity, is conspicuously absent from this case. The object for which these lands were granted by the Act of Congress of September 28, 1850, was apparently a visionary one under the conditions then existing in this State. Their reclamation would necessarily cost immense sums, which it was impossible to appropriate out of the general revenues of the counties interested, and immense tracts of government land ready for the plow and axe were open in the western States and territories to private acquisition. Upon the enactment by Congress of the Homestead Law these became the goal of the home-seeker. The population of the counties containing the most of these swamp and overflowed lands was sparse and poor. This record illustrates that it was impossible to give them

away so as to realize for the public, revenue at the rate of even the fraction of a cent per acre at which it was sought to tax them. Even those who had been so rash and hopeful as to acquire them for a consideration, had joined, like Ringer, in the bread-quest to the more promising fields of the far West. It was under these circumstances that the State entirely abandoned its trust for their reclamation as hopeless, and devoted whatever might be realized from their sale to other public purposes. Some of them were so selected that they were then, or afterward became, readily saleable, and contributed materially to the educational fund of the counties in which they were situated. Other tracts, like the lands in question, lay buried under a foot or two of water for a half century, awaiting the growth in wealth and practical science which should make them available for the sustenance of the people. During this time the forests of the country were depleted by fire and axe, and much of this land, like the tract we are considering, became more or less available for timber, and people entered upon it and paid taxes for the purpose of cutting and selling that product. In this particular instance matters have now progressed so far that the means have been found to enter upon a real scheme of reclamation, and thirty-six acres of this tract has been drained of its water and placed in cultivation, and the question is now presented whether those who paid the first consideration are, by law, entitled to the net profits. We have no doubt that the officers of the county have acted honestly, and, in their opinion, for the best interests of the people, in each step they have taken to make these lands useful. In doing this they have caused the legal title to be conveyed to Ringer, who did not live to see the accomplishment of his dream, by a patent founded upon a consideration which we will not only presume but believe to have been the best price which could have been obtained at the time, and which the county has elected

to keep, rather than to proceed in equity to have the patent set aside on account of any alleged misuse of their powers by the officers charged with its interests. So far as anything appearing in this suit goes, they are still of the same mind, and we will not disturb it for them. The title to this tract remains in Ringer, his heirs and their grantees, unless something subsequent to his patent has occurred to divest it.

III.   The deed from the sheriff of New Madrid county to Charles M. Smith dated June 5, 1890, offered for that purpose, has no foundation on which to stand. It purports to convey the interest of "L. M. Ringer" against whom, in that name, the judgment for delinquent taxes recited in it was rendered on September 20, 1889, by default. The only notice of the institution of the suit was directed to the defendant by the same name, while the title stood upon the record in the name of Lewis M. Ringer, to whom it had been conveyed by the Eltzroth patent. That the sheriff's deed was ineffective to convey the title of Lewis M. Ringer has been too often decided by this court to be now disturbed. The curious upon the subject are referred to Stevenson v. Brown, *ante*, p. 182, decided at the present term, in which the leading cases are collected.

*Tax Deed: Initials of Owner.*

IV.   The defendants mildly suggest that this deed has been aided by the operation of the three-year limitation provided in section 221 of the act approved March 30, 1872, "concerning the assessment and collection of the revenue." [Laws 1872, p. 130.]   It is as follows: "Any suit or proceeding against the tax purchaser, his heirs or assigns, for the recovery of lands sold for taxes, or to defeat or avoid a sale or conveyance of lands for taxes (except in cases where the

*Tax Deed: Three-Year Limitation.*

taxes have been paid or the land was not subject to taxation, or has been redeemed as provided by law) shall be commenced within three years from the time of recording the tax deed, and not thereafter.'' They do not rely on adverse possession, but simply on the recording of the sheriff's deed made in pursuance of an execution sale upon a judgment for taxes under the act relating to the collection of delinquent taxes approved April 12, 1877. In Stevenson v. Brown, supra, GRAVES, J., speaking for this court, said that this section seems to have had a checkered career, and that the learned counsel seemed to have reached the conclusion that there was no merit in the claim under it, and that having abandoned their own offspring it was not for the court to nurture it into life. In Bird v. Sellers, 122 Mo. 23, we held that the section was still in force with respect to deeds executed under the Revenue Law of 1872, but approved our decision in Blodgett v. Schaffer, 94 Mo. 652, that it had no application to a sheriff's deed under the act of 1877, like the one now before us. This latter proposition is founded on the plain and unambiguous terms of the statute and has been firmly established by the repeated decisions of this court. [Bartlett v. Kauder, 97 Mo. 356; Burkham v. Manewal, 195 Mo. 500.]

V. The respondents claim title under the provisions of section 1884, Revised Statutes 1909, prescribing the limitation of thirty-one years for the bringing of any action to recover the land. It is possible that this point owes much of its force to the persuasive insistence of respondents that great injustice would result to Mr. Hamilton, who came to our State on the wave of reclamation in 1906 and purchased these lands, by postponing the reward of his enterprise to one whose faith had budded too soon to avoid the frost. We are, however, relieved

**Thirty-Year Limitation: Lawful Possession for One Year.**

from much embarrassment in this respect by the fact that it is our duty to enforce the law, which, in the end, as we are taught to believe, distributes justice more evenly and impartially than caprice.

The section mentioned requires that, in order to perfect its bar, the land should have been in the lawful possession of the person claiming adversely to the legal title for one year, during all of which the claimant may bring his action. The question is, therefore, whether the respondents had been in possession of the land for one whole year prior to the 13th day of July, 1910. It is admitted that they took actual possession at the time or soon after they contracted for the clearing of the land, in December, 1909, so that it is necessary for them to show there was some condition that the law will construe as possession, that is to say, constructive possession before that time. The respondents have attempted to sustain this burden by showing that at sometime before they acquired this tract of 1150 acres, there was a clearing of forty or fifty acres in section nineteen which was fenced and presumably in cultivation. Whether this was done before or after the land came under a single ownership in Mr. Allison in 1902 does not appear, and is not important. Nor does it appear who made the clearing. Section eighteen, a square mile of woods and swamps, intervened between section nineteen and section seven. During the ownership of respondents this old clearing has been occupied and cultivated by a tenant of theirs, but there is no evidence that his control or operations have ever extended outside the limits of his field. Nor does it appear that any use was ever made of the land in question by the respondents except to sell some timber used in building a barge in 1907, and to pasture some cattle. How much of this timber was cut from the land in question, if any, and what cattle have been in that part of the woods does not appear. It does appear, however, that the whole tract was unenclosed timber lands. That these facts

are entirely insufficient to constitute such possession as will support the running of the Statutes of Limitation is too well settled upon principle to be questioned and upon authority to be overthrown. Nor do they constitute such possession as would authorize the presumption of notice to the true owner that his possession was interrupted or his title in danger. [Lumber Co. v. McCabe, 220 Mo. 154, 183; Nye v. Alfter, 127 Mo. 529; Pharis v. Jones, 122 Mo. 125; Carter v. Hornback, 139 Mo. 238.]

Nor does the fact of the existence and cultivation of the field in section nineteen tend to transform the acts mentioned into acts of ownership extending the possession of this field over the entire tract purchased by Hamilton in 1906. There is no evidence that the clearing was made by any one under any title including the land in controversy. This plaintiff is claiming no title whatever to the land upon which it is situated. Nor does his deed include it, but only includes the tract in section seven. We cannot express ourselves more clearly on this question than by the use of the language of the Supreme Court of Michigan in Turner v. Stephenson, 72 Mich. 409, 411. It said:

"We cannot see how a man, by simply occupying his own land, the title to which is not disputed, can acquire title to another's land, simply because the deed to the land he occupies covers adjoining land, which he neither owns nor occupies. If so, then the mere recording of a deed would amount constructively to actual possession. The plaintiff in this case, or any other person, is not bound to suppose that a man occupying adjoining land to his own is thereby claiming title to or possession of his premises."

VI. We do not think the doctrine of laches is applicable to this case. The whole question relating to the loss of the legal title by non-payment of taxes supplemented by adverse possession is covered by

Laches.

the section of the statute we have considered in the last paragraph and we can see no other element of estoppel in this case. [Lumber Co. v. McCabe, supra, and cases cited.]

VII. Respondents suggest that in consideration of the persuasive equities with which they are clothed in this particular case, the trial court should have excluded the certified copy of the record of the Eltzroth patent, because it does not show, by any statement or scroll, that a seal was attached to the original. It is sufficient to say that the attestation of this instrument states that it is given under the hand *and seal,* as commissioner, of the special commissioner. It is too late now to disturb the numerous cases which hold this to be a sufficient showing that the instrument was sealed.

For the reasons stated the judgment of the circuit court is reversed and the cause remanded for such further action as may be necessary to determine the rights of the respective parties upon the principles here stated. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur; *Bond, J.,* in the result.