## Elliott v. Hensley.

(Decided June 11, 1920.)

### Appeal from Leslie Circuit Court.

1.  Adverse Possession—Adjoining Tracts of Land—When Adverse Holding of One Will Not Embrace Others.—An adverse entry and holding within one, of two or more uninclosed adjoining tracts of land, which the real owner obtained by separate deeds or patents will not put the adverse claimant in the adverse possession of any of the tracts except the one in which he made the entry and took actual possession of.

2. Adverse Possession—Adjoining Tracts of Land—When Adverse Holding of One Will Include Others.—Where a person has good title by deed or patent to several adjoining tracts of land and incloses the entire body by a fence, this act of inclosure will convert the different tracts into one body of land and an adverse entry and holding within any part of the inclosure under a color of title deed or patent will place the adverse claimant in the possession of all of the land within the enclosed boundary that is within his color of title deed or patent.

3. Adverse Possession—Color of Title—Effect of in Extending the limits of an Adverse Holding.—Where an adverse claimant, under a color of title deed or patent, enters within the lines of his color of title deed or patent upon land that is in the constructive but not the actual possession of another person, his adverse entry and holding will place him in the adverse possession of all the land that lies within the lines of his color of title paper.

4. Adverse Possession—Entry Without Color of Title.—Extent of Adverse Possession.—Where a person without color of title paper enters upon land in the constructive or actual possession of another, his adverse holding will be limited to the extent of his actual adverse possession.

5. Adverse Possession—Constructive Possession—Actual Possession.—Two persons cannot at the same time be in the constructive possession of the same body of land. If there be no actual possession, the constructive possession is in the holder of the best title, and the person in the constructive possession of land under a good title cannot be ousted by anything less than actual physical possession.

6. Adverse Possession—Person in Possession of a Tract Under Good Title Cannot Secure Adverse Possession of an Adjoining Tract Without Entry Thereon.—A person who has good title to and actual possession of a tract of land, cannot acquire title by adverse possession to an adjoining tract that he claims under a color of title deed or patent unless he has made an actual entry and taken actual possession of such adjoining tract.

7. Adverse Possession—Entry Under Color of Title Paper.—If a person who has made entry and taken actual possession of a body of unoccupied land should afterwards obtain a color of title deed or patent that includes the land he is in the adverse possession of, as well as other vacant land, his actual entry and possession, if continued, will extend his claim to the lines of his color of title paper.

8. Adverse Possession—Requisites of—Open and Visible Acts.—When a hostile claimant asserts title by adverse possession, the nature and extent of his possession must be so open, visible and notorious, considering the location, surrounding and character of the land, as to give notice to a person of ordinary prudence that a hostile intrusion has been made on his premises.

9. Adverse Possession—Requisites of—Open and Visible Acts.—The nature and extent of the open and visible acts that will be suf-

ficient to give to the real owner the requisite notice depends largely on the facts and circumstances of the particular case.

B. B. GOLDEN and LEWIS & LEWIS for appellant.

CLEON K. CALVERT, E. C. O'REAR and J. C. JONES for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Reversing.

In August, 1840, there was issued to Felix J. Gilbert a patent for 50 acres of land in Leslie county. On July 8, 1870, W. H. DeGroot obtained four patents, Nos. 43195, 43196, 43197 and 43198, for 200 acres each, the land embraced in these patents being in one body, the southern end of which projected into the senior patent of Gilbert, and to the extent that the land patented to DeGroot lapped over the patent issued to Gilbert it is conceded that the DeGroot patents were void.

In 1876, Robinson became the owner of the land for which patent issued to Gilbert, and in March, 1885, he obtained a patent for 100 acres, the lines of this patent embracing practically all of the Gilbert patent, a large part of the DeGroot patents 43197 and 43198 north of the Gilbert patent, and also a portion of the DeGroot patents, 43195 and 43196.

Gertrude Elliott, at the time this suit was brought, was the owner by connected paper title of the four patents issued to DeGroot, but neither she nor any of her vendors had ever been in the actual possession of any of the land embraced in these patents, all of which was wild, uncultivated and uninclosed, except a few acres on the southern boundary adjoining the Gilbert land.

In 1910, Henry M. Hensley, the appellee, who connects himself in a regular way, through purchases extending back to Robinson with the Robinson patent, as well as the patent to Gilbert that had been purchased by Robinson, brought this suit against Gertrude Elliott, the appellant, averring that he was the owner and entitled to the possession of that part of the DeGroot patents that were covered by the junior Robinson patent.

For answer to this suit, Gertrude Elliott averred that the Robinson patent, under which Hensley claimed, was junior to the DeGroot patents and, therefore, to the extent that it lapped over these patents, was void. She further set up her title to these DeGroot patents, but ad-

mitted that to the extent they lapped over Felix J. Gilbert's prior patent, the DeGroot patents were void.

After the evidence had been taken by depositions, the case was submitted to the court and there was a judgment in favor of Hensley awarding to him the ownership and possession of the land embraced within the four DeGroot patents that was covered by the lines of the patent issued to Robinson.

It also appears that Robinson, after he became the owner of the Gilbert patent in 1876 and before he obtained the patent issued to himself in 1885, had built a house and made a clearing with cultivation on the Gilbert land. A part of this clearing and cultivation undoubtedly extended into the DeGroot patent, 43198, and Hensley contends that it also extended into the DeGroot patent, 43197.

As the patent issued to Robinson in 1885 covered that part of the Gilbert patent on which the house was situated and the clearing made and also that part of the DeGroot patent that had been cultivated and cleared, the court was evidently of the opinion that this cultivation and clearing, together with the adverse holding, placed Robinson and his vendees. down to and including Hensley, not only in the actual possession of the DeGroot patent, 43198, into which the clearing extended, but also in possession of the other three DeGroot patents, although no part of either had ever been taken into actual possession by either Robinson or those claiming under him by clearing, cultivation or otherwise.

The court was evidently influenced to make this decision upon the ground that these four contiguous and coterminous DeGroot patents, which were issued on the same day to the same person, constituted one connected body of land, and this being so the actual adverse holding by Robinson and his vendees of any part of the land within either of these patents and also within the lines of his patent placed the adverse holders in the actual adverse possession of all the DeGroot patents that were within the boundary of the patent issued to Robinson, as there had never been, as we have said, any actual possession of any of the DeGroot patents by any person claiming under them.

On this appeal by Gertrude Elliott, it is contended—first, that each of these DeGroot patents should be treated as a separate, distinct body of land from each of the other DeGroot patents and, therefore, the entry and adverse holding by Hensley, and those under whom he

claims of a part of one of these patents, would only place him in the possession of that one in which there was an entry and actual possession; and, therefore, it is said that if Hensley is entitled to any of the DeGroot patents, the recovery in his behalf should be confined to the land covered by patent 43198, as this was the only patent in which there was an adverse entry and holding.

Her second contention is that there was no such entry or holding on the part of Robinson or his vendees as would entitle Hensley to recover any of these DeGroot patents on the ground of adverse possession.

In considering the case we will take up first the question whether these DeGroot patents should be treated in the application of the doctrine of adverse possession as one body of land or four separate and distinct tracts.

In 1885, when Robinson obtained his patent embracing as we have said parts of the four DeGroot patents, these DeGroot senior patents, although not in the actual possession of any person, were in the constructive possession of DeGroot, except to the extent of the clearing in 43198 and this constructive possession—there being no actual possession, adverse or otherwise, extended except to this clearing—to all of the land embraced within the lines of the four patents. This constructive possession followed as a necessary consequence, the title to this land which was in DeGroot by virtue of the patents issued to him, and this title and constructive possession he could be divested of only by an actual, open, notorious and visible entry and possession by an adverse claimant for the statutory period.

As was said in Whitley County Land Company v. Powers' Heirs, 146 Ky. 801: "It is as well settled as any principle in the land laws of the state can be that two persons cannot at the same time be in constructive possession of the same body of land, and that in a contest between constructive title owners the oldest title must prevail." This principle is aptly stated in Jones v. McCauley, 2 Duvall 14, where the court said: "There can be no constructive possession of the same land by conflicting claimants. In the absence of any actual possession, if there be any constructive possession, it must necessarily be in the holder of the best title, unless he had renounced it. And his constructive possession can never be ousted by any constructive possession claimed under the inferior title; nothing short of renunciation or actual disseisin can evict him."

Looking now to the claim of adverse possession asserted by Hensley and those under whom he claims, we find that this claim had its origin in the patent obtained by Robinson in 1885, and it is the contention of Hensley that as he and those under whom he claims entered at least upon and took actual possession of a part of the DeGroot patent, 43198, this open, visible and notorious entry and possession, which was maintained for the requisite length of time, placed him in possession of all the DeGroot patents within the lines of the Robinson junior patent; and we have been furnished with some authority supporting this view. Overton's Heirs v. Davisson, 1 Grat. (Va.) 211; Sharp v. Shenadoah Furnace Company, 100 Va. 27; Virginia and West Virginia Coal Company v. Charles, 251 Fed. 152; Rich v. Braxton, 158 U. S. 375, 39 Law Ed. 1022. It should be said, however, that the land involved in the Rich v. Braxton case was located in Virginia, and the Supreme Court followed the ruling of the Virginia court in the Overton case, as did the federal court in the Charles case.

We do not think, however, that these cases are in accord with the weight of authority or the decisions of this court, and we are not disposed to follow them. Here we have a case in which four separate and distinct patents were issued for four separate and distinct, but adjacent, tracts of land. There had never been on the part of the patentee or those claiming under him any inclosure or actual possession of any part of the land covered by these patents. At the time Hensley set up his claim of right to it under the Robinson junior patent, all of this land was in the same wild, uncultivated, uninclosed condition that it was when the patents were issued, except the small clearing in patent 43198, adjoining the Gilbert land.

It had never been converted into one body of land by fenced inclosure and the mere fact that the same person happened to obtain the four patents at the same time did not have the effect of converting the land covered by them into one body in the sense that an adverse claimant, by making an actual entry within one of the patents, might assert claim to the others or any part of them.

It would be extending far beyond reasonable or just bounds the doctrine of adverse possession to permit an intruder to perfect his claim of adverse possession to several adjoining, uninclosed, vacant tracts of land, each conveyed to the rightful owner by separate title, on the

ground that he had taken actual, physical possession of one of the tracts.

It has been the policy of this court to limit the acquiring of title by adverse possession to states of case in which the adverse holding was sufficient to put the rightful owner on notice of its nature and extent, and if the owner of these DeGroot patents should have found an intruder in the actual possession of a part of one of them, it would not bring home to him any notice whatever that the intruder had asserted or would assert a hostile claim to the other adjoining patents outside of the one on which he had settled.

In 1 R. C. L., page 729, the principle we have announced is thus stated: "The doctrine that the actual possession of a part of the premises will be constructively extended to all the land described in the 'color of title' deed or patent related only to an entire thing; that is, the constructive possession can only extend to the whole of that which is partially occupied. It does not extend to other and distinct parcels, even though they are contiguous, and were conveyed to the claimant by the same person and at one time. The reason for this exception to the rules stated in the preceding paragraphs is that, in the absence of an actual adverse possession, the law constructively places the possession of land in the owner of the legal title, and the actual possession of one tract of land is not a sufficiently open and notorious possession of an adjoining tract, which is not occupied, to give the owner notice of the adverse claim thereto." To the same effect are 2 Corpus Juris, page 238; Elliott v. Cumberland Coal Company, 109 Tenn. 745; Carstophen v. Holt, 96 Ga. 703; Hornblower v. Blanton, 103 Me. 375; Turner v. Stephenson, 72 Mich. 409, 2 L. R. A. 277.

If, however, the land covered by these DeGroot patents had been enclosed by a fence this act of inclosure would have converted it into one connected body of land and thereafter if Robinson, under a color of title patent, had made an entry on any part of this enclosed boundary, taking actual, open, notorious and visible possession of same and maintaining it without interruption for fifteen years, this adverse entry and holding would have placed him in the actual possession of so much of the enclosed and fenced boundary as was embraced within the exterior lines of his color of title patent. Because when the owner of contiguous tracts of land that he has acquired by sep-

arate deeds or patents converts them by fenced inclosure into one body, the interior lines of the patents or deeds under which he holds the land so enclosed, will be obliterated and actual possession within the fenced inclosure would put him on notice that the entrant was asserting a hostile title that might affect all of the enclosed land.

On this point, it was said in Parsons v. Dills, 159 Ky. 471, that: "Appellants further contend that the proof of adverse possession is altogether insufficient. This contention is based on the assumption that where a deed conveys several tracts by separate descriptions, and not by one complete boundary, possession of one of the tracts for the statutory period is not a possession of the other tracts embraced in the deed. For this position there is respectable authority. Vol 1, R. C. L., Adverse Possession, sec. 45; Hornblower v. Blanton, 103 Maine, 375, 125 Am. St. R. 300; Carson v. Bennett, 18 N. C. 546, 30 A. D. 143; Loftus v. Cobb, 46 N. C. 406, 62 A. D. 173. However, in this state, where because of peculiar conditions the plea of adverse possession is regarded with more favor, that rule does not prevail. The deed, though invalid, is evidence of the extent of possession. Where, therefore, the tracts, though separately described, are conveyed by the same person and embraced in the same deed, and are contiguous to each other, adverse possession of one of the tracts for the statutory period will extend to the whole. The owner or tenant holding under him may also move from one tract to another described in the particular deed, and the different periods of possession, just so they be continuous and aggregate 15 years, will constitute adverse possession of all the tracts described in the deed. On the other hand, possession of one tract described in one deed is not of itself sufficient to constitute possession of another tract described in another deed as against a superior title holder."

We are, therefore, of the opinion that the adverse holding of Hensley and those under whom he claims must be confined to such of the DeGroot patents as he made an actual entry in and took actual adverse possession of.

The remaining question is, has there been such actual possession of any of these DeGroot patents as would give Hensley the right to hold them, or any of them, by adverse possession to the extent of the lines of the Robinson patent? The answer to this question depends largely upon the evidence; but before considering it it may be

well to briefly restate a few pertinent facts relating to this feature of the case. It appears, as we have said, that Robinson, when he purchased the Gilbert tract in 1876, obtained a good title to it and having settled on it soon after his purchase, he proceeded to build on it a house and some outbuildings and make a clearing for cultivation, which clearing and cultivation certainly extended into the DeGroot patent 43198, and this adverse holding and possession within this DeGroot patent continued without interruption to the date when this suit was brought by Hensley. So that when Robinson in 1885 obtained his patent, which embraced, as we have said, practically all of the Gilbert land to which he had previously secured a good title, as well as parts of all the DeGroot patents, this color of title patent did not in and of itself have the effect of putting Robinson in the possession of any part of the DeGroot senior patents, because under the very terms of section 4704, of the Kentucky Statutes, "every entry, survey or patent made or issued under this chapter shall be void so far as it embraces lands previously entered, surveyed or patented."

Therefore, it was indispensably necessary, in order to put Robinson in the adverse possession of any of the DeGroot patents to the extent of his color of title patent that he should make an actual entry, accompanied by physical as well as open, visible and notorious acts of adverse possession on the DeGroot patents and within the lines of his color of title deed.

The circumstance that Robinson at the time and previous to obtaining his color of title patent was in the actual possession of the Gilbert land to which he had good title did not have the effect of putting him in possession of any part of the DeGroot patents embraced within the lines of his color of title deed, as nothing short of actual entry and possession within the DeGroot patents would be sufficient to place him in the adverse possession of the DeGroot land.

This question has been definitely and finally settled time and again by this court in the cases of Whitley County Land Company v. Power's Heirs, 14 Ky. 801; Burt and Brabb Lumber Company v. Sackett, 147 Ky. 232; Brewer v. War Fork Land Company, 172 Ky. 598; War Fork Land Company v. Marcum, 180 Ky. 353; Bowling v. Breathitt Coal, Iron & Lumber Company, 134 Ky. 249, and many others.

In the Bowling case, Bowling asserted claim by adverse possession to 100 acres of land to which he had color of title deed but no actual possession, upon the ground that he had lived for many years on a tract of land that he owned adjoining this 100, but the court in rejecting the claim of Bowling said: "So the question comes to this: Can a man who is living on a tract of which he has title, and which is outside of the plaintiff's claim, obtain adverse possession of land within the plaintiff's older patent simply by taking a deed to it and continuing to live outside of the lap?" After quoting from Trimble v. Smith, and many other cases, the court further said: "If, in a case like this, a man could, while living on land which he admittedly owned, gain title within an elder patent which adjoined him, by simply marking off a boundary and taking a deed from some one to it, where there was nothing on the land to put the owner on notice of his adverse claim to it, there would be no security for land titles, and the entire doctrine that the settlement of the junior patentee, when without the lap, will give him no possession within the senior patent, would have to be abandoned. The plaintiff, having the title to the land, was in the constructive possession of it. The defendant could not defeat this constructive possession by merely living on an adjoining tract of land not included in the plaintiff's patent, and claiming land within that patent."

Again in the case of Brewer v. War Fork Land Company, we said: "A person who has under a good title constructive possession of a boundary of land is not required to take notice of subsequent deeds or patents that may be acquired by strangers to his title, or to look to the records for the purpose of ascertaining if any person has subsequently secured a deed or a patent covering the land embraced by his senior patent. He need only look to the land itself. So long as the land itself is free from actual intrusion his title and constructive possession will remain undisturbed and unaffected. These principles have been announced by this court in a long line of decisions, beginning with Trimble v. Smith, 4 Bibb, 257, decided in 1815, and ending with Cumberland Coal Co. v. Croley, 172 Ky 222, decided in 1916."

But notwithstanding the plain declarations in the cases cited that a person who has good title to a tract of land on which he actually resides cannot assert title by adverse possession to an adjoining tract that he claims

under a color of title deed or patent, without having
made an actual entry and taking actual possession
thereof, attorneys are continually but unavailingly at-
tempting to ignore the principle so firmly established.

Turning now to the evidence relied on to show an
actual entry and actual adverse possession in the De-
Groot patents, we find well proven the actual, physical
possession by Hensley and those under whom he claims
of the Gilbert tract to which he and those under whom
he claims has, as we have said, good title, and there is
also evidence conducing to show that Hensley and those
under whom he claims asserted ownership to all the land
within the lines of the Robinson patent, but when it
comes to showing an actual, adverse possession within
the lines of the DeGroot patents, there is no evidence
sufficient to establish any adverse entry or actual hold-
ing in any of these patents, except 43198; and the entry
and cultivation within the lines of this patent appear
to have been made after Robinson purchased the Gilbert
land in 1876 and before he obtained his patent in 1885,
but the clearing and cultivation within this patent have
continued without interruption from the time they were
first made.

It will be observed that the entry of Robinson in this
DeGroot patent was made before he obtained his color
of title patent, and if he had not obtained this patent
his right to hold any part of the DeGroot land under an
actual entry would have been confined to the lines of his
clearing and cultivation. But when he obtained the color
of title patent, this clearing and cultivation placed him
in the possession of the DeGroot patent in which the
entry was made to the line of his color of title patent.

This principle has been often announced by this court
in cases holding that: ''Where one claims under color
of title and is in actual possession of a part of the land
within his boundary, the law by construction carries his
possession to the full extent of his boundary; but where
he claims title by adverse possession only, he acquires
no title to any land except that which is in his actual
possession.'' Slaven v. Dority, 142 Ky. 640; Richie v.
Owsley, 137 Ky. 63; White v. McNabb, 140 Ky. 828;
Harrison v. McDaniel, 2nd Dana 348.

Nor is it indispensable to put an adverse claimant
under a color of title deed or patent in possession to the
lines of his deed or patent that he should make an entry
and take actual possession after he obtains it. It will

be sufficient if it appears, as in this case, that the adverse claimant before he obtained his color of title patent made an actual entry and took actual possession of the vacant land of another within the lines of the color of title patent thereafter obtained, if it further appears that his actual, adverse possession made before he obtained his color of title patent was continued without interruption up to the time the color of title patent was issued and thereafter maintained for a sufficient length of time.

So that we do not attach importance to the fact that the entry made by Robinson in the DeGroot patent, 43198, was made before he obtained his patent, because after obtaining his patent, he continued in the actual, physical possession of that part of this DeGroot patent which he had been in the actual, physical possession of before his patent issued and his actual, physical possession within this patent was of such nature and extent, and so open, visible and notorious as to put the owner of the DeGroot patent upon notice that an intruder had entered and was in the actual possession of a part of it.

It is further claimed on behalf of Hensley that there was such entry and possession by those under whom he claims of the DeGroot patent, 43197, as to put him in the actual possession of this patent to the extent of the Robinson patent. It is shown, by Blakeman, the surveyor, who was the only witness, except Dixon, who testified on the point, that the clearing made on the Gilbert land extended only very slightly into patent 43197, and was not sufficient either in nature or extent, considering the wild and uninclosed character of the country, to put the owner of the DeGroot patent upon notice that any entry or possession had been taken within this patent. He said the clearing which extended within patent 43197 was "merely a pin point, so to speak;" it did not embrace one-fiftieth part of an acre; it would be hard for a person owning the adjoining boundary to discover the encroachment upon his land; he couldn't do it without a surveyor at all, and it would take the most careful surveying to discover any encroachment or to determine whether the clearing was inside or outside of the Gilbert patent.

R. L. Dixon made a survey of this land for Hensley and it is claimed in briefs of counsel for Hensley that his evidence shows that there was a considerable clearing

within patent 43197, but an examination of his evidence does not support counsel. This evidence is not sufficient to show any right on the part of Hensley to claim by adverse possession any part of patent 43197, as it is too well settled to require even citation of authority that when a hostile claimant undertakes to assert title by adverse possession to land in the constructive or actual posessesion of another, the nature and extent of his possession must be so open, visible and notorious—considering the location, surroundings and character of the land—as to give notice to a person of ordinary prudence that a hostile intrusion has been made on his premises.

We do not, of course, undertake to lay down any rule respecting the nature or extent of the adverse holding that will be sufficient to give to the real owner the requisite notice. This, as we have said, must depend largely on the facts and circumstances of the particular case. But applying the principle announced to the facts of this case, it is perfectly plain that the small clearing, such as Hensley and those under whom he claims made in patent 43197, considering the wild, uncultivated condition of the country and the fact that this clearing was merely an extension of the large clearing rightfully made on the Gilbert land, did not even approach the requisite of an entry demanded by the law of adverse possession.

Wherefore, so much of the judgment as awarded Hensley any part of the DeGroot patents, 43135-6-7 is reversed. The judgment is affirmed as to patent 43198, and on a return of the case judgment will be entered in conformity with this opinion.