### Simpson, et al. v. Howard, et al.

(Decided November 27, 1923.)

## Appeal from Harlan Circuit Court.

1. Public Lands—No Title Derived from Patent to Land Covered by Prior Patent.—No title was acquired under a patent for land within a prior patent.

2. Quieting Title—Defendant Must Show Title to Obtain Affirmative Relief.—In an action to quiet title, defendant was not entitled to affirmative relief under a counterclaim, where he showed no title in himself, although the burden is on plaintiff in such an action to establish his title as a condition precedent to recovery.

3. Adverse Possession—Acquisition of Patent Considered, when Extent of Possession in Issue.—While, if parties went into possession under a patent claiming to the boundaries thereof, their possession would not be restricted to the boundaries of junior patents obtained by them, simply by reason of the fact that such patents were taken, the taking of the junior patents is a circumstance that may be considered where the extent of the possession is in issue.

4. Adverse Possession—Possession Held Not Extended by Purchase of Tract.—Where plaintiffs' ancestors, after a conditional line was established, and plaintiffs themselves after a conveyance, remained in the same residences on the same farm, without change of actual possession at all, plaintiffs could not by the purchase of the tract extend their own adverse possession so as to include all the land up to the conditional line.

FRANK BAKER, JAMES H. JEFFRIES and G. A. EVERSOLE for appellants.

HALL, JONES & LEE and W. F. HALL for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

Aritha Howard and her children brought suit against Charles Simpson to quiet their title to a tract of land on

Cumberland river in Harlan county and to enjoin the defendants from further trespassing thereon. The answer traversed the allegations of the petition, set up title in defendant to a tract of land of 40 acres, which it is admitted lies within the boundary described by plaintiffs, and by counterclaim sought to have his title thereto quieted, and asked an injunction to restrain plaintiffs from interfering therewith. Much proof was taken and on final hearing the chancellor decided that the plaintiffs had no title and dismissed their petition. He also decided that the defendant had no title and dismissed his counterclaim.

All the lands claimed by both parties are included in the boundary of a patent issued to John Bailey on the — day of —— 1804. Plaintiffs have made an attempt to connect with that patent and thereby to show paper title deducible from the Commonwealth, but as there is at least one missing link in the chain this is ineffectual. Without going into the details thereof we will examine the evidence to see if they had acquired ownership of the disputed lands by adverse possession.

It appears that in the year 1833 Jesse Brock and his son-in-law, John Coldiron, brought suit in the circuit court of Lincoln county, which then embraced the county of Harlan, and in which they sought to extract title from one John Yantis through a title bond dated February 6, 1830, which Yantis had executed to them for the lands embraced in the John Bailey patent. This suit dragged along to a judgment in 1839. In this judgment the master commissioner was directed to convey to them the interest of Yantis therein and which he accordingly did. While this was insufficient to cover other breaks in the title, it is claimed that it was sufficient to constitute color of title in the grantees, and that they entered thereunder, and the plaintiffs and those under whom they claim have since held possession, claiming to the boundaries of that patent.

Peggy Coldiron, daughter of John Coldiron and granddaughter of Jesse Brock, married Adrain Howard. It is claimed that she inherited her father's interest in this land, and through some arrangement by inheritance or otherwise she and her husband acquired the interest of Jesse Brock therein, though this is assumed rather than proven by competent evidence. It is further claimed that afterward the entire tract was claimed and held ad-

versely by them; that Adrain Howard died about the year 1862, and that at the instance of Peggy Coldiron Howard, their children and William Coldiron, a brother of John Coldiron, agreed on a division of the lands and made a conditional line between them in 1865; that at her death the lands descended to the children of her and Adrian; that two of them, Jesse and Adrian Howard, Jr., by proper conveyances purchased the interests of their brothers and sisters therein and continued to live thereon; that Adrian Howard, Jr., mortgaged a part of the land to secure some indebtedness, and in a suit against him in the Harlan circuit court this tract was sold on the — day of ——, 1902. It was purchased by W. F. Hall, who held it for two years and conveyed it by deed of special warranty to the plaintiff, Aritha Howard, who was the wife of Jesse Howard; that during Hall's incumbency he rented it to tenants and had it cultivated, and since then Aritha Howard has had it in possession and used and claimed it as her own. This particular tract contained 135 acres and is the one set out and described in the petition, and the conditional line above described forms its northeastern boundary.

The disputed land is admittedly within the Bailey patent, hence Simpson derived no title from his patent, which was issued in the year 1891. It consists of about 40 acres, all of which was wild and uncultivated at the time the patent was laid. Some two acres of this lies on the opposite side of Cumberland river, and on this Simpson built a residence and lived for five or six years. However, he sold this to another party and it is not in controversy. He afterward sold the disputed land to his son, Charles Simpson, the defendant in this action, who made no attempt to reduce same to possession, except by the occasional cutting of timber, until within a short time before the suit was filed, when he built a small house thereon, though it is questioned whether this is on the disputed land. At all events he and those under whom he claims have had no actual, adverse, continued possession for as much as fifteen years. As he is the appellant it might not be amiss to say that although the burden is on the plaintiff to establish their title as a condition precedent to recovery, yet as he has shown no title in himself either by way of record or possession he is in no position to secure affirmative relief, and the court did not err in dismissing his counterclaim seeking such relief.

Turning again to the cross appeal of appellees, if the facts stated above were all, it would appear that their case is practically established, but if in deed and in truth John Coldiron and Jesse Brock were in possession claiming under the Bailey patent and transmitted it to Adrian and Peggy Howard it is likely that they or the one in possession in 1843 did not know the patent lines, for in that year Adrian Howard, who had then married Peggy Coldiron, laid a warrant upon 300 acres of the land embraced in this boundary and the patent thereof was granted to him, and later, to-wit, on 22nd of October, 1844, William Coldiron and the same Adrian Howard were granted a patent on 150 acres additional lying within the boundaries thereof. In addition to this Adrian Howard had purchased 50 acres lying within the same boundary which had been patented to Tony Milton on the — day of ——, 1823, but a large part if not all of this was included in the 300 acre and the 150 acre patents, *supra*. In addition to this it seems that there were other patents taken out, covering other portions of the John Bailey patent, which in fact comprised considerably more than 500 acres, and which the various patentees and their vendees have since occupied without molestation, in this regard it appearing that William Coldiron above mentioned was claiming under two patents, one issued to Jesse Coldiron in 1835 and the other to Boyd Landsdown in 1844.

While we would not be understood as laying down the principle that, if the parties went in under the Bailey patent claiming to the boundaries thereof, their possession would be restricted to the boundaries of the junior patents simply by reason of the fact that such patents were taken, we are of the opinion that where the extent of the possession is in issue that taking such patents is a circumstance that may be considered in that connection. Looking at the evidence in this way it appears that John Coldiron and his wife, and possibly Jesse Brock, lived with Adrian and Polly Howard, and if they were claiming the entire Bailey survey and had gone in under that patent, and were endeavoring to strengthen their title thereto by laying junior patents thereon, the natural inference is that they would have covered the entire boundary, no reason to the contrary appearing. Again, if they had been claiming the entire boundary it is probable that they would have objected to the claims and possession of the other junior patentees, who, it seems, ac-

quired more than one-third of it. Further, while the various Howards have during these years lived on the land claimed by them, cleared, enclosed and cultivated much of it, built houses thereon and exercised all kinds of ownership for generations, it is rather significant that none of these acts of possession except occasionally cutting timber was ever exercised beyond the boundaries of the fifty, the one hundred and fifty and the three hundred acre patents until within the last seven or eight years. It is true that the conditional line referred to was beyond the boundaries of these patents and that this line is one of the lines of the W. F. Hall tract. It is further true that it is one of the lines of the tract of land set out by plaintiffs herein, and that Hall had that tract leased and cultivated while he owned it and that plaintiffs have been cultivating it since their purchase; but the significant fact remains that until within the last seven or eight years no part of the lap between the conditional line and the lines of the junior patents was cultivated or enclosed by them, even under this purchase, all of which indicates that the lines of these patents were the extent of possessions claimed. Now as plaintiffs' ancestors after the conditional line was established and plaintiffs themselves after the Hall conveyance remained in the same residences on the same farm, and there being no change of actual possession at all, unless the claim of possession of Adrian Howard had extended to the conditional line, and he had thereby acquired title thereto, the plaintiff's in this action could not by the purchase of that tract extend their own possession so as to include it. Frazier v. Ison, 161 Ky. 379; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249; Whitley Land Co. v. Powers, 146 Ky. 801; Elliott v. Hensley, 188 Ky. 444.

It is shown that the plaintiffs and those through whom they claim have been in the actual, adverse possession of the 50 acre tract above alluded to for more than the statutory period. As located by them it would include a small part of the disputed land, as located by the defendant it does not include any of it. From the evidence this is a doubtful question, the weight of it being against the plaintiffs' contention. The plaintiffs also claim that a small part of the Adrian Howard 300 acre patent laps the disputed land. This is also a question of doubt. We cannot clearly see that any of the disputed land is included in any of the land owned by plaintiff unless we should

decide that they have held and claimed under the Bailey patent up to the conditional line mentioned. The evidence failing to demonstrate this, we cannot say that the chancellor erred in holding that the plaintiff had failed to manifest title.

Wherefore, the judgment is affirmed on original and cross appeal.