## United States Trust Co. v. Frakes et al.

April 26, 1940.

James M. Gilbert, Judge.

W. T. Davis for appellant.

E. B. Wilson and Edward C. O'Rear for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

This action was filed by the appellant, United States Trust Company, assignee of the Louisville Property Company, against the appellees, H. M. Frakes, German Methodist Orphans Home and the Board of Missions and Church Extension of the Methodist Episcopal Church, to enjoin the cutting of timber and for the value of timber cut and removed from the land described in the petition. Appellees answered claiming to be the owners of all the land described in the petition by adverse possession. An amended petition was filed alleging that appellees had cut and removed timber from another tract of land owned by appellant to which appellees did not claim title. Appellees denied cutting timber from this tract. A large amount of proof was taken and on final submission the chancellor denied appellant's claims and dismissed its petition and this appeal follows.

Appellant claims title to the lands described in the petition under eight patents for 200 acres each, numbered 46,305 to 46,312, issued on June 15, 1872 to Edward Innis based on surveys made in 1871. Appellant showed good paper title to the land covered by these patents and the land in controversy is within the lines of the patents. These patents were rectangular in shape, patents numbers 46,305, 46,307, 46,309 and 46,311 lying on the south side of Pine Mountain and the remaining patents lying largely on the north side. Most of the land in controversy lies within the limits of patents numbers 46,307 and 46,309.

The appellees partly base their claim of title by adverse possession on certain entries that were made by Jesse Daugherty near the top of Pine Mountain about the time of the Civil War. The evidence shows that Jesse Daugherty lived near the top of the mountain on patent number 46,307 and made a small clearing at that time. He later built a house at the foot of the mountain on Pine Creek. On the southern end of patents numbers 46,305 and 46,307 John J. Partin, in the year 1883, patented certain land including almost one-half of patent number 46,307, which was a senior patent, and on February 6, 1890 he conveyed approximately 60 acres of this patent to William Daugherty, a son of Jesse Daugherty. The Partin patent was junior to appellant's patents but appellant concedes that appellees, who are successors in title to William Daugherty as to the 60 acres, have good title thereto by adverse possession.

To establish their title to the land in dispute appellees exhibit in their chain of title a deed from Jesse Daugherty conveying to a son, William Daugherty, the land in controversy, this deed being dated in the year 1885. Appellees are successors in title to William Daugherty and they claim that by actual entry on a portion of the land in controversy made under this deed, which was recorded in 1918, they became owners by adverse possession to the extent of the boundaries in this deed. Appellants claim, however, that the entry made by William Daugherty was made under the deed to him from John J. Partin and not under the Jesse Daugherty deed and that therefore such entry did not have the effect to extend the possession of William Daugherty to the boundaries in the deed from Jesse Daugherty to him.

The Jesse Daugherty deed boundary laps over on the Partin patent, approximately 20 acres being contained in this lap. All the improvements and the inclosures made by the Daughertys are within this lap.

At the outset we may say that while Jesse Daugherty undoubtedly lived on the land in controversy for a good many years and had a small clearing near the top of the mountain we do not consider this such possession as would give title to the land in controversy because he did not have a clearly marked and defined boundary. It is true that the evidence shows that some timber was marked on this boundary near the top of the mountain but it wholly fails to show such a well marked boundary as would be sufficient to give Jesse Daugherty title.

Our examination of the evidence further convinces us that when the Daugherty house was built on Pine Creek it was not built within the limits of the Jesse Daugherty deed boundary, that is, the deed from Jesse Daugherty to William Daugherty. Three surveyors for appellees made surveys and filed maps in evidence and these surveyors locate the house on Pine Creek within the limits of the Jesse Daugherty deed boundary but surveyors for the appellant also filed a map which locates this house a few poles outside of the southern line of the Jesse Daugherty deed boundary. We are convinced that the location as made by appellant's surveyors is correct since H. F. Davis, one of these surveyors, testified that his survey was made in the year 1902 and that he at that time located on the ground all but one or two corners of the John J. Partin patent. The second corner of that patent, the location of which determines whether or not the house on Pine Creek was within the Jesse Daugherty deeded boundary, was at that time definitely located by Mr. Davis who testifies that he found the monuments actually called for by the survey. The other surveyors did not actually locate the monuments on the ground but located this corner by protraction. A careful consideration of all the evidence on this point, which is too lengthy to be set out in full in this opinion, convinces us that the correct location of the house on Pine Creek was south of the Jesse Daugherty deeded boundary. However, we do not consider that this fact is in anyway conclusive of the case in appellant's favor because an entry was later made by William Daugherty

within the Jesse Daugherty deeded boundary and we think the evidence is sufficient to show that such entry was made pursuant to the Jesse Daugherty deed of 1885 and not under the deed to William Daugherty from John J. Partin dated in 1890. This assumption, of course, is predicated on the fact that a deed was actually made by Jesse Daugherty to William Daugherty in the year 1885. Appellant contends most earnestly, however, that no such deed was ever made and that this deed appearing in appellees' chain of title was a forgery. A discussion of the evidence on this point thus becomes necessary.

At the southern end of appellant's patents and west of the land deeded by John J. Partin to William Daugherty in 1890 is a patent of 100 acres taken out by William Partin in 1846. This is one of the oldest patents in that part of the country and it is conceded that it is senior to appellant's patents. A man by the name of Powers became the owner of this patent and sometime prior to the year 1917 cut timber on the land in controversy in this action. At that time William Daugherty brought suit against Powers and others to enjoin the cutting of timber, asserting title to the land in controversy. William Daugherty was successful in this law suit and it was therein adjudged that he was the owner of the land. At that time neither the deed from Jesse Daugherty to William Daugherty had been recorded but both deeds were, during the progress of that litigation, recorded on September 3, 1918.

The Jesse Daugherty deed purports to have been acknowledged before Wiley Partin, as deputy county clerk, on March 8, 1885. It is shown that this date fell on Sunday. Appellant introduces witnesses who state that they examined the record books of the Bell County Court line by line and that these books show that Wiley Partin was not appointed deputy clerk until the year 1888. H. F. Davis, an engineer testifying for appellants, stated that in 1902 and 1903 when he was surveying appellant's patents he attempted to find out the claims of all persons to land in that vicinity and that he called on William Daugherty for his deeds and received from him the John J. Partin deed but did not get the Jesse Daugherty deed from him; that he surveyed out the John J. Partin deed boundary but did not survey out

the Jesse Daugherty boundary. He states that if William Daugherty had had the Jesse Daugherty deed and furnished it to him he could have located that boundary. It is also shown that up to the year 1918 William Daugherty assessed and paid taxes only on 50 acres of land (evidently the John J. Partin land) but that in the year 1918 and thereafter, following the recording of the Jesse Daugherty deed he paid much larger taxes on a larger body of land. It is also shown by a deputy assessor that William Daugherty on his assessments prior to the year 1918 did not claim to own but 50 acres of land. It is also testified by witnesses for appellant that the first record they can find of deeds in the Bell County Clerk's office, bearing the acknowledgment of Wiley Partin, deputy clerk, is in the year 1888 after the order appears on the order book appointing him deputy. Some testimony, though rather weak, is also introduced to the effect that Wiley Partin had a shady reputation as a forger or manufacturer of deeds. Testimony for appellant indicates that the Jesse Daugherty deed was found in an old abandoned house tied up in a sock and one witness states that Wiley Partin made a statement to him that he could make a deed one day and make it look a hundred years old the next day.

While it must be admitted that the testimony casts considerable doubt on the authenticity of the Jesse Daugherty deed, we do not feel that it is strong enough to justify us in holding that it was a forgery. As a matter of fact the deed might have been executed by Jesse Daugherty to William Daugherty and not acknowledged before Wiley Partin, or not acknowledged at the time it purports to have been, and yet have been a valid deed. The only effect of the certificate of acknowledgment was to enable the deed to be recorded. Further, it might be that Wiley Partin had been appointed deputy clerk prior to the date of the acknowledgment of this deed and the order of appointment not placed on the order book. In the litigation of 1918 this deed was apparently established as genuine and after this long lapse of time we do not feel warranted in holding that it was a forgery on the testimony introduced in this action.

Assuming, therefore, that the deed was executed by Jesse Daugherty to William Daugherty in the year 1885, the necessary consequence is that the entry within the

Jesse Daugherty deeded boundary was made pursuant to this deed and not pursuant to the deed from John J. Partin to William Daugherty dated in 1890. As the Jesse Daugherty deed was the older of the two deeds, it follows that the entry was made under the older deed. The first definite evidence of entry within the Jesse Daugherty deeded boundary appears to have been in the year 1909 when the house on Pine Creek was abandoned and another house built on the hill about 200 yards north of the Pine Creek house. This was an entry under the Jesse Daugherty deed or at least under it and the Partin deed simultaneously, and other houses were later built within the limits of this deed boundary. This adverse possession continued under the unrecorded Jesse Daugherty deed until the year 1918, when this deed, as well as the Partin deed, was recorded. We have then the situation where William Daugherty in the year 1918 was in the actual adverse possession of a part of the land covered by appellant's patents under a recorded deed embracing the land in controversy. This possession under this recorded deed continued for more than 15 years up to the filing of the present action on March 3, 1938. This was sufficient in the ordinary case to extend such adverse possession to the extent of the boundaries in this deed and give good title to the land embraced in the deed. In the ordinary case where one is in possession of land claiming title by a deed and this deed describes the boundaries by natural objects so that it can be run by a surveyor, his possession is to the extent of the boundary described in the deed. Burt & Brabb Lumber Co. v. Sackett et al., 147 Ky. 232, 144 S. W. 34; Wynn v. Gover, 268 Ky. 562, 105 S. W. (2d) 636; Hillman Land & Iron Co. v. Marshall, Ky., 119 S. W. 180.

It is contended by appellant, however, that even if the entry in this case was made under the Jesse Daugherty deed, still the only actual adverse possession shown by appellees is on the land embraced in patent number 46,307 and that as appellant's patents are separate and distinct tracts the actual possession of appellees in patent number 46,307, although under the Jesse Daugherty deed, does not extend this possession to any of the other patents.

The trial court found as a fact that the actual in-

closure, or possession, of the Daughertys and their successors in title extended into the William Partin 100 acre patent above mentioned and into more than one of the Innis patents to which appellant is successor in title. In this we think, however, the trial court was clearly in error because even if we take the most favorable map introduced in evidence by appellees it clearly appears that when appellant's patents are properly located on this map the inclosure did not extend into any other patent but was confined to patent number 46,307.

In Elliott v. Hensley, 188 Ky. 444, 222 S. W. 507, 509, it was held that an adverse possession and holding within one of two or more uninclosed adjoining tracts of land, which the real owner obtained by separate deeds or patents, will not put the adverse claimant in the adverse possession of any of the tracts except the one in which he made the entry and took actual possession, although his holding is under a color of title deed or patent, the boundaries of which extend into the other tracts or patents. Elliott was the owner of four patents and Hensley had entered into one of the patents under a color of title deed, the boundary of which extended into other patents besides the one on which Hensley had entered. It was held that his adverse possession was limited to the patent on which the actual entry was made. The reason assigned was the four patents were separate and distinct bodies of land and had never been converted into one body by fenced inclosure and the mere fact that the same person happened to obtain the four patents at the same time did not have the effect of converting the land covered by them into one body in the sense that an adverse claimant by making entry within one of the patents might assert claim to the others. The court said in that case:

> "It would be extending far beyond reasonable or just bounds the doctrine of adverse possession to permit an intruder to perfect his claim of adverse possession to several adjoining, uninclosed, vacant tracts of land, *each conveyed to the rightful owner by separate title,* on the ground he had taken actual physical possession of one of the tracts."

The court quoted from 1 R. C. L., page 29 which says in part, in speaking of adverse possession, "It does not extend to other and distinct parcels, even though they are

contiguous, and were conveyed to the claimant by the same person and at one time.'' The court also quoted with approval from Parsons v. Dills, 159 Ky. 471, 167 S. W. 415, and the latter case rejects the doctrine announced in the quoted language from 1 R. C. L., page 729 and says ''Where, therefore, the tracts, though separately described, are conveyed by the same person, and embraced in the same deed, and are contiguous to each other, adverse possession of one of the tracts for the statutory period will extend to the whole.''

If the Innis patents were still held under separate, disconnected paper titles, the rule announced in Elliott v. Hensley, supra, would serve to limit the entry and adverse possession on patent 46,307 to the boundary of that patent and appellees would not have good title to any of the land in any of the other patents. Such is not the case, however, for on May 24, 1906, all the patents in controversy were conveyed to the Yellow Creek Land Company (predecessor in title of appellant) by one deed and by this deed there was a consolidation of the patents into one boundary. Under the rule announced in Parsons v. Dills, supra, as these patents, though separately described, were conveyed by the same person and embraced in the same deed, and are contiguous to each other, adverse possession in one of the patents for the statutory period under the Jesse Daugherty color of title deed is sufficient to extend such adverse possession to the boundary called for in that deed even into the other patents on which no entry was made. In short, we construe Elliott v. Hensley, supra, to mean that where separate, contiguous tracts of land are acquired under separate deeds or patents, a consolidation thereof into one body of land is effected by a fenced inclosure or by a conveyance of the separate tracts in one deed. Certainly that is the rule announced in Parsons v. Dills, supra. which Elliott v. Hensley, supra, quotes with approval.

By the deed to the Yellow Creek Land Company in 1906, conveying the patents in controversy, the patents, although separately described, were converted into one boundary and on September 3, 1918, when the Jesse Daugherty deed was recorded, appellees were in actual adverse possession within this consolidated boundary under this recorded deed covering the land in contro-

versy and they continued to remain in such possession for more than 15 years before the filing of this action. This was sufficient to give them title to the land in controversy covered by their recorded deed.

The remaining question in the case is whether or not appellees cut timber on appellant's patents outside the land in controversy, to which we have held appellees showed good title. Glenn F. Justice, who actually surveyed the eastern line of the Jesse Daugherty deeded boundary, testifies that considerable timber was cut east of this line on appellant's patent number 46,305. He, together with J. Matt Gibson, an experienced timber man, made an estimate of the timber cut outside of the land claimed by appellees and states that it amounted to 44,528 feet and 2,437 linear feet of poles. Other witnesses for appellant as well as witnesses who testified for appellees, make it apparent that timber was cut on patent number 46,305 outside the land in controversy. Appellee Frakes testifies that he pointed out the line to the men who cut the timber and instructed them not to cut east of this line but his testimony is somewhat weak as to the manner in which the line was pointed out. Considering the evidence as a whole on this point we have no doubt that considerable timber was cut on appellant's land not in controversy in this case. Appellant values this timber at $287.77 but this valuation is probably somewhat high. We find that $200 is a reasonable value for timber cut on appellant's land and judgment should be entered for appellant for this amount.

The judgment is affirmed insofar as it adjudged appellees to have good title to the land in controversy and reversed insofar as it denied appellant damages for timber cut on appellant's land outside of the land in controversy with direction to enter a judgment in appellant's behalf for $200.