COMMONWEALTH of Kentucky, DEPART-
MENT OF PARKS, Appellant,

v.

Morris STEPHENS et al., Appellees.

Court of Appeals of Kentucky.

Oct. 28, 1966.

Robert Matthews, Atty. Gen., Joseph H. Eckert, Asst. Atty. Gen., Frankfort, for appellant.

Homer Ramsey, Whitley City, J. B. Johnson, Sr., J. B. Johnson, Jr., Williamsburg, for appellees.

CLAY, Commissioner.

This suit was brought by the Commonwealth to quiet title to a two-acre tract of land adjoining certain property it owns near Cumberland Falls. It developed that appellees hold the record title to this land, so the claim of the Commonwealth was based solely upon adverse possession for a period of 15 years. The Chancellor determined (1) the Commonwealth could not acquire title by adverse possession, and (2) the required elements of adverse possession had not been proved. While we differ with the Chancellor with respect to his first conclusion, the record amply supports his second finding.

The question of whether the Commonwealth (or one of its agencies, or subdivisions) may acquire title by adverse possession is a new one in this state. Our research indicates there are few pertinent decisions from other jurisdictions on the question. Certain texts state without equivocation that states and other governmental entities may acquire title in this manner the same as any other person. 3 Am.Jur.2d Adverse Possession, section 139 (page 225); 2 C.J.S. Adverse Possession § 6 (page 518). Most of the cases cited in support of this proposition involve agencies or political subdivisions of the state, but of course they do represent the state in the proceedings. It has been held that the United States may acquire title by adverse possession. Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259. No case to the contrary has been cited nor has one been disclosed by our research.

It was the view of the Chancellor that under sections 13 and 242 of our Constitution the state and other governmental units are prohibited from taking property without paying just compensation therefor, and to permit the acquisition of title by adverse possession would violate these provisions. This overlooks the fact that after the running of the statute of limitation (KRS 413.010), the original owner is no longer in a position to assert title to the property and it has effectively vested in the adverse possessor. See Frazier v. Cox, Ky., 125 S.W. 148; Lyle v. Holman, Ky., 238 S.W.2d 157; and Sweeten v. Sartin, Ky., 256 S.W.2d 524, 525. Thus it may be said that since the original owner has lost his claim of title, the state is no longer taking his property.

The Chancellor in his opinion observed that it would be unfair to permit the Commonwealth to acquire property by adverse possession when the property owner does not have such a reciprocal right, as we held in Ford Motor Co. v. Potter, Ky., 330 S.W.2d 934, 937. The fact that the Commonwealth does not lose title to property by the running of the 15-year statutory period does not deprive it of the right to take advantage of this statute of limitation. Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259.

It has been suggested that the owner is helpless to prevent encroachment on this property by the Commonwealth so as to stop the running of the limitation period against him, particularly in view of Foley Construction Company v. Ward, Ky., 375 S.W.2d 392, wherein we held that the Commonwealth may not be sued without its consent. However, the property owner does at least have a remedy in the form of a

reverse condemnation proceeding against the state. This right to sue the Commonwealth has been recognized since Foley in Commonwealth, Dept. of Highways v. Widner, Ky., 388 S.W.2d 583, and Commonwealth, Dept. of Highways v. Gisborne, Ky., 391 S.W.2d 714. This remedy we deem sufficient to protect the landowners' rights.

 Having decided that the Commonwealth could have acquired title to the property in controversy by adverse possession, we find it clear from this record that there was a failure to establish such a claim. It was based principally upon the existence of a stable and a parking lot. We can do no better than quote from the Chancellor's well-considered opinion:

"Notwithstanding the above discussed constitutional issue, there is another more basic reason why the defendants should prevail. The plaintiff (the Commonwealth) simply failed to prove several of the elements of adverse possession. And the burden of proving adverse possession must necessarily be upon the party without legal title. Tartar v. Tucker, Ky., 280 S.W.2d 150 (1955). The evidence in support of such a claim must be clear and unequivocal. 2 C.J.S., Adverse Possession, Section 214.

"The all important element of continuity was definitely not proven. As noted above, the evidence was sketchy or completely lacking of any adverse use prior to 1953—with the exception of the conflicting evidence concerning the operation of the stable. Our law is clear that one can only date his claim as far back as he is able to show a continuous occupancy. Fletcher Lumber Co. v. Fordson Coal Co., 311 Ky. 19, 223 S.W. 2d 175, 178 (1949); Sparks v. Jackson, 142 Ky. 17, 133 S.W. 959 (1911). The plaintiff failed to put into evidence any testimony of such physical acts as would give the owner constant notice of its possession. Federal Gas, Oil & Coal Co. v. Harmon, 254 Ky. 255, 71 S.W.2d 630, 633 (1934).

"There is also some merit to the defendants' argument that the plaintiff's entry, being without color of title, was insufficient to acquire title since the plaintiff did not prove its claim to a well-defined or well-marked boundary. U. S. Trust Co. v. Frakes, 282 Ky. 683, 139 S.W.2d 759 (1940). The area has never been fenced or marked. It is seriously doubted that, prior to 1953 or 1954, one could have gone upon the tract and seen any evidence of the extent of an adverse holding, if any. Although the plaintiff alleges that the area is bordered on one side by the old country road and on the other by the Falls Branch, a personal observation reveals that the Falls Branch is somewhat removed from the edge of the parking lot, in fact, a steep ravine separates the two. Moreover there was no evidence as to what constituted the back boundary. It has been held that a squatter acquires possession no further than he actually encloses the lands. Stearns Coal & Lumber Co. v. Boyatt, 168 Ky. 111, 181 S.W. 962, 966 (1916), 2 C.J.S., Adverse Possession, Section 85.

"The element of notoriety also was not proven by the plaintiff. As above noted, numerous residents of the Cumberland Falls area testified that the area was known to be 'Brunson property' prior to the construction of the parking lot in 1954. Not one witness testified to the contrary. 'Notorious possession contemplates possession that is so conspicuous that it is generally known and talked of by the public or the people in the neighborhood.' 2 C.J.S., Adverse Possession, Section 44. Notoriety must be shown for fifteen continuous years. Here, the plaintiff's claim, if any, was not known until 1953 or 1954."

 Since this suit was filed in January 1965, it was necessary for the Commonwealth to establish continuous adverse possession at least back to 1950. Disregarding all other questions, there was an obvious gap in physical possession between

1949 (when the stable was torn down) and 1953 (when steps were taken to improve the parking lot). The Chancellor could have reached no other conclusion but that appellant had failed to prove its claim of adverse possession.

The judgment is affirmed.