UNITED STATES of America, Plaintiff-Appellee,

v.

371.94 ACRES OF LAND, MORE OR LESS, IN the COUNTY OF OBION, STATE OF TENNESSEE, Frances Smith Warlick, Hulon O. Warlick, III, et al., Defendants-Appellants.

No. 20144.

United States Court of Appeals, Sixth Circuit.

Sept. 22, 1970.

E. Brady Bartusch, Memphis, Tenn., for defendants-appellants; Frank B. Gianotti, Hulon O. Warlick, Memphis, Tenn., on brief.

Jacques B. Gelin, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee; Shiro Kashiwa, Asst. Atty. Gen., George R. Hyde, Atty., Dept. of Justice, Washington, D. C., Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Western District of Tennessee in a condemnation suit brought by the United States. The principal issue on appeal concerns the ownership of three tracts of the condemned land which were claimed both by the State of Tennessee and by the Appellants—Frances Smith Warlick and Hulon O. Warlick. The District Court held that the State of Tennessee had adversely possessed the land against the Appellants for the requisite statutory period and, pursuant to the value per acre fixed by the United States in their original deposit, awarded the State $20,119.71, plus interest, for the taking. On appeal, the Warlicks claim ownership over the three disputed tracts and challenge their size and valuation as established by concessions of the State of Tennessee to the original complaint of the United States. In the event the Warlicks prevail, the amount of their award will be determined by an alternative jury verdict. The United States, which would be required to pay a greater award in the event of a reversal of the judgment below, is the Appellee.

On July 29, 1965, the United States filed a complaint in condemnation and a

declaration of taking to acquire fee title to 371.94 acres of land for the Reelfoot National Wildlife Refuge in Tennessee. Three parties—the Warlicks, the Edgins and the State of Tennessee—claimed interest in the condemned land which was composed of five tracts: Tracts 27, 27–I, 27a, 28 and 28–I. The right of the United States to take the land for the purposes set forth in the complaint was admitted by the parties. 40 U.S.C. § 257 (1964); 16 U.S.C. § 715 et seq. (1964); and the General Appropriations Act of 1951. See, Tennessee Code Annotated 51–609 (State's enabling legislation). For purposes of this appeal, we are concerned with the ownership, valuation and size of three of the five condemned tracts of land: Tracts 27–I, 27a and 28–I.

The Warlicks claimed title by deed to Tracts 27–I, 27a and 28–I, as well as to Tract 27, which was the only tract whose ownership was not contested. Also, the Warlicks disputed the valuation and size placed upon the condemned lands by the United States. The Edgins, who are not a party to this appeal, claimed title to Tracts 28 and 28–I and subsequently agreed to settle their claims by negotiations with the other parties. The State of Tennessee claims title to each of the three disputed tracts: Tracts 27–I, 27a and 28–I. Its claim was founded upon a 1914 decision, State of Tennessee ex rel. v. West Tennessee Land Company, 127 Tenn. 575, 158 S.W. 746 (1914), in which the State was held to be owner of all lands lying below the ordinary low water mark of Reelfoot Lake. In 1927, the State caused a survey to be made of the Lake's low water mark to fix the boundary of the State's land.[1] Unlike the Warlicks and the Edgins, the State did not contest the values and sizes of the disputed tracts as defined by the United States in their original deposit.

In January, 1966, the District Court appointed a Special Master to determine ownership of the three tracts of land disputed by the State and the Warlicks. At the hearing the State offered proof of ownership of its claimed three tracts by adverse possession. In October, 1966, the State, over the objection of the Warlicks, was granted leave to amend its answer to conform to its proof of ownership by adverse possession. Rule 15(b), Federal Rules of Civil Procedure. The Warlicks were given a full opportunity to bring forth evidence to rebut the State's proof with regard to adverse possession.

The Master issued a written opinion in which he found that the State had "actual, visible, continuous, notorious, exclusive and adverse possession * * * for [over] twenty years" of the three disputed tracts over which the State originally claimed ownership by virtue of the land's alleged location within the average low water mark of Reelfoot Lake. The Master further found that the Warlicks held title to 149.08 acres of land, Tract 27, abutting the three disputed tracts of land, Tracts 27–I, 27a and 28–I.[2] Further, he found that since the dispute as to the size of the condemned tracts concerned only the lands adversely possessed by the State, "which does not quarrel with the Government survey, I [the Special Master] have adopted the Government survey as to the number of acres [209.17 acres]

* * * to be the property of the State of Tennessee." In so doing, the Special Master chose not to consider contrary evidence introduced by surveys taken by the Warlicks or their agents.

In April, 1968, the Governor and Attorney General of Tennessee, authorized by a resolution of the Tennessee House of Representatives, quitclaimed all of the State's right, title, and interest in the disputed tracts to the Warlicks. Accordingly, the Warlicks filed an amended answer seeking to have it entered *nunc pro tunc* so that the assignment of inter-

---

1. These same boundaries were used by the United States to determine the size of lands to be condemned.

2. The Master also made findings with respect to the Edgins which are not relevant for purposes of this appeal.

est would be effective as of the date of the filing of the declaration of taking and the Warlicks would be compensated as owners of the disputed tracts. However, the District Court held that the State's attempt to quitclaim its interest after the Special Master found ownership in the State was prohibited by the Assignment of Claims Act, 31 U.S.C. § 203 (1964).

Further, the District Court, sitting without a jury, reviewed and affirmed the factual findings of the Special Master as to the size and ownership of the disputed three tracts; but it ordered a jury trial on the issue of valuation. The Court permitted the jury to return alternative verdicts based upon whether the condemned tracts were owned individually or as combined units.[3] Pursuant to the jury verdict and the concessions made by the State of Tennessee as to the size and value of its land, judgment was entered by the District Court.

In the appeal the Warlicks raise several related contentions dealing with the State's ownership of the disputed tracts, to-wit: (1) the State should not have been permitted to amend its answer to conform with its proof of adverse possession after hearings had begun, *Contra*, Rule 15(b), Federal Rules of Civil Procedure (where "objecting party fails * * * [to show] prejudice"); (2) the State may not constitutionally adversely possess lands because it amounts to a taking of property without just compensation, *Contra*, United States v. McCulley, 100 F.Supp. 379 (D.C.Tenn. 1951) (applying Tennessee law), Commonwealth, Dept. of Parks v. Stephens, 407 S.W.2d 711, 18 A.L.R.3d 673 (Ky. 1966), and Adverse Possession by Government 18 A.L.R.3d 678; (3) the State did not produce sufficient evidence to constitute adverse possession under Tennessee law and (4) the State should have been permitted to relinquish its claim to the disputed tract, *nunc pro tunc*, as it sought to do. *But see*, United States v. Dow, 357 U.S. 17, 22–23, 78 S.Ct. 1039, 2 L.Ed.2d 1109 (1958), 31 U.S.C. § 203, 40 U.S.C. §§ 258a–258e (1964).

We turn first to the question of the sufficiency of the evidence to sustain the findings of the Special Master, affirmed by the District Court under Rule 53(e) (2), Federal Rules of Civil Procedure, that the State of Tennessee had adversely possessed the disputed tracts. While the State of Tennessee has statutes defining and limiting actions arising out of claims of adverse possession, Tennessee Code Annotated §§ 28–201 to 28–211 (1956), the theory upon which the State of Tennessee proceeded was that of adverse possession at the common law, to-wit: "actual, visible, continuous, notorious, exclusive and adverse possession" for at least twenty years, with or without color of title. *See* Sequatchie Valley Coal and Iron Co. v. Coppinger, 95 Tenn. 526, 32 S.W. 465 (1895); Moore v. Brannan, 42 Tenn.App. 542, 304 S.W.2d 660 (1957).

The State of Tennessee presented evidence that it surveyed the disputed land in 1927 and painted white lines as blaze marks on trees; that this survey was recorded in the Registrar's office of Obion County in 1928; that while others may have entered the land until 1941, at that time the State leased the land to the United States of America, Department of Interior, Fish and Wildlife

---

3. The alternative verdicts of the jury were:

(a) Based upon the assumption that Tract 27 was a separate tract, we find that the fair market value on July 29, 1965, of each acre in it was $151.

(b) Based upon the assumption that Tract 27, 27–A and 27–I were all combined to form a single parcel, we find that the fair market value on July 29, 1965, of each acre in it was $169.00.

(c) Based upon the assumption that Tract 28 was a separate tract, we find that the fair market value on July 29, 1965, of each acre was $200.00.

(d) Based upon the assumption that Tracts 28 and 28–I were combined to form a single parcel, we find that the fair market value on July 29, 1965, of each acre in it was $200.00.

Service; that in 1942 the Fish and Wildlife Service conducted a survey in which they erected a strand of wire to run as a boundary, painted yellow blaze marks on trees and erected signs indicating that the enclosed territory was a wildlife refuge upon which hunting, fishing and trespassing were prohibited; that this land was patrolled and poachers were warned off the land or prosecuted, including from time to time representatives of the Warlicks; and that such boundaries, patrols and actual possession of the premises continued for twenty-three years until August, 1965, when the United States filed its declaration of taking.

On the other hand, the Special Master did find that the Warlicks paid taxes on the disputed land from 1942 until 1949, at which time said taxes were repealed and that the Warlicks "vigorously protested to the [appropriate officials of the] State of Tennessee, Federal Representatives and others that the State was encroaching on the land in question."

It is clear that the actions taken by the Warlicks to protect their claim to the disputed lands would have been inadequate to toll the common law limitation of twenty years for adverse possession had the adverse possessor been a private party. In the instant case, however, a sovereignty is the adverse possessor, a fact which severely impairs the Warlick's ability as landowners to protect their property rights.

■ As a sovereign state, Tennessee is able to restrict the right of its citizens to bring suits against it either "in equity" or "in law." Actions "in equity"—such as, ejectment or recovery of the land and mesne profits against the State of Tennessee—were not available to the Warlicks under Tennessee law, although they would have been available had the adverse possessor been a private party. Cox v. State, 217 Tenn. 644, 399 S.W.2d 776 (1965); Dickens v. Shelby County, 178 Tenn. 305, 309, 157 S.W.2d 825, 827 (1942). Actions "at law" were available to the Warlicks only during a small portion of the twenty-year period

during which the State of Tennessee was adversely possessing their land, Tennessee Constitution Article 1, § 17; Tennessee Code Annotated §§ 20–1702, 23–1423, 23–1424. The Warlick's limited remedy at law is Tennessee's "reverse condemnation statute," Tennessee Code Annotated § 23–1423, which is limited to the first "twelve (12) months after the land has been actually taken possession of, and the work of the proposed internal improvement begun." Tennessee Code Annotated § 23–1424. Zirkle v. City of Kingston, 217 Tenn. 210, 396 S. W.2d 356 (1965).

■■ The one year statute of limitations on the Tennessee "reverse condemnation statute" renders it ineffective to deal with the problem of the State adversely possessing land over a period of several years. This statute entitles the State to a possessory interest in the land which it has occupied, Rogers v. City of Knoxville, 40 Tenn.App. 170, 289 S.W.2d 868 (1955); but it does not vest fee simple title in the State. Rather than a substitute for actual condemnation of privately held lands, T.C.A. § 23–1424 merely acts to bar suits brought under the reverse condemnation statute more than a year after the State has already taken possession and begun internal improvements. It is a procedural statute concerned with administrative convenience of the State and, in so doing, it limits the landowner's rights to sue for possession. Rogers v. City of Knoxville, *supra*.

The reliance by the Special Master and the District Court on the case of Commonwealth, Dept. of Parks v. Stephens, 407 S.W.2d 711, 18 A.L.R.3d 673, as proof that a reverse condemnation statute protects landowner's rights against the State is improper. In Kentucky there is no one-year statute of limitations on the bringing of such actions as there is in Tennessee; and a reverse condemnation proceeding was available to the original property owner at any time during the period of time the State was adversely possessing the land. Thus, the landowner had a reme-

dy in the form of an effective legal action to protect his property throughout the running of the period of limitations.

The Warlicks, being unable to bring an action against the State either at law or in equity for at least nineteen of the twenty years during which the common law period of limitations ran, were unable to do more than pay the taxes on the land and "vigorously" protest the State's encroachments, both of which the Special Master found they did. In the classical case of Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259, which involved the right of the United States to possess adversely the land of private citizens, the United States Supreme Court stated that a "protest against the occupancy * * * [of the United States against whom] an action cannot be brought" would destroy a claim of adverse possession by the United States. 147 U.S. at 517, 13 S.Ct. at 422. We can see no reason why a similar restriction should not be placed upon the ability of the sovereign State of Tennessee—which in this matter has effectively insulated itself from legal or equitable challenge—to possess adversely the lands of their citizenry.

We find that the Warlicks, by paying the taxes on the land when due and by "vigorously" protesting the encroachments of the State during the period of limitations to the proper quarters in the State and federal government, tolled the running of the period of limitation and deprived the State of the degree of possession necessary to assert a claim of adverse possession. Stanley v. Schwalby, *supra*. *See* Whitlow v. Hardin County, 13 Tenn.App. 347 (1930) (for the application of estoppel principles to toll the period of limitations against the State in a reverse condemnation action).

In view of our finding that the State did not gain title to the disputed tracts by adverse possession, we do not reach the other issues raised by the Appellants regarding ownership of the disputed tracts. Further, we need not consider the contentions of the parties with regard to the Assignment of Claims Act, 31 U.S.C. § 203 (1964). The judgment of the District Court is vacated and this cause is remanded to the District Court with instructions to enter judgment for the Appellants based upon the jury's alternative verdict.